DAVID D. LEFLER *vs.* P. H. & G. W. FIELD

50  407
2ap341
50b   407
f 68 AD⁶ 44

Exceptions to a referee's findings of fact are idle and of no avail. The decision of a referee is always open to review upon the facts, in the Supreme Court, without any exception. The court will always look into the evidence, if the question is raised, so far as to see whether there is evidence tending to prove the facts, or either of them, as found by the referee; and no exception is necessary to raise the question.

An exception to a referee's conclusions of law, and to each and every part thereof, is so general as scarcely to raise any questions of law whatever. At most, it can only raise the question whether any of the conclusions of law are justified by the facts found.

Where, in an action to recover the price of a quantity of barley sold and delivered by the plaintiff to the defendants, the question at issue was whether the contract as made was for merchantable barley, or for good barley badly stained; *Held*, that the question put to a witness, whether the plaintiff intended to sell the barley as merchantable barley, was properly overruled; there being in the case no question of fraud or deceit in the sale, and the question of intention being in no respect material.

Any private or specific instructions given by principals to their agent for the purchase of barley, in regard to particular kinds, or qualities, of barley to be purchased by him, cannot affect third persons dealing with the agent; unless such instructions are brought to the knowledge of such persons.

If the agent, in such a case, exceeds his authority, he is liable to his principal, and they must seek their redress against him, and not against persons with whom he has dealt, if such dealing is within the general scope of the authority.

In an action to recover the price of grain agreed to be sold and delivered, proof that after the making of the contract there was a decline in the price of grain, is incompetent and immaterial as evidence upon the issue of contract or no contract, or of delivery and acceptance; but it is competent and material upon cross-examination, as having some bearing upon the conduct and entire credibility of the witness.

A question not raised at the trial, cannot be raised and considered afterwards.

It is the duty of a party, if he is not satisfied with the facts found by the referee, and desires other findings of fact in addition thereto, to move the court, before the time for excepting has expired, to send the case back to the referee to have him find one way or the other upon the other material questions of fact in issue and not passed upon. If nothing of this kind is done, the presumption arises that the referee has found all the material questions of fact against the defeated party.

It will not do, in such a case, for the party to lie by until the settlement of the case before the referee, and then request him to make new or further find-

ings, besides those contained in his report; as the referee then has no power to make new findings of fact, or to examine the case for any other purpose than to settle truly what took place and was determined when he had juris-diction of the case for the purpose of trial and determination.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover the price of a crop of barley sold and delivered by the plaintiff to the defendants. The defense set up in the answer was that the barley was represented by the plaintiff to be, and was bought as merchantable, but was not so ; that its value was over $100, and no money was paid thereon or earnest given ; and that the defendants did not receive the barley.

The referee found the following facts :

. 1st. That the defendants, in the fall of 1864, were co-partners in the business of buying grain, and resided at Geneva, Ontario county. That the plaintiff was a farmer, residing at Covert, Seneca county.

2d. That the defendants, in September and October, 1864, had agents at various points on Seneca and Cayuga lakes, employed by them to purchase grain for them, and that one Albert Morehouse was their agent, so employed by them, at Kidder's ferry, on Cayuga lake, in Seneca county, where he had a warehouse.

3d. That in September, 1864, the said defendants, by and through their agent, (Morehouse,) contracted and bought of the plaintiff, his crop of barley that year, then unthreshed, at the price of two dollars per bushel, the plaintiff at the time telling said Morehouse that the barley was good barley, but stained, and that it had laid out in the rains, but was dry when it was got into the barn ; that the barley was to be delivered at a time fixed, and sooner if said defendants wished it, and said Morehouse, their agent, notified said plaintiff to do so, and in that event he was to deliver it so as to be loaded into the defendants' boat whenever the boat should arrive at said landing or warehouse.

4th. That afterward, in the latter part of September, the

said Morehouse did notify the plaintiff that he expected the defendants' boat there in a day or two, and wanted the barley delivered so as to be shipped on that boat, and that the plaintiff immediately threshed said barley. That while he was threshing the same, and when the same was nearly all threshed, and while a large quantity of the threshed barley was lying on the plaintiff's barn floor, the said Morehouse called at the plaintiff's barn, and then and there examined the said barley—its quality and condition—saying that the barley was stained more or worse than he supposed or thought it was, but after examination and conversation with the plaintiff, directed the plaintiff to draw it down to the warehouse, and requested him, if possible, to commence that day. That the plaintiff finished threshing that day, and the next day commenced to deliver the barley and continued to deliver until the amount of 614 $\frac{9}{60}$ bushels had been so delivered, and all of his crop that year, (excepting that he retained 25 bushels for his seed, which he sowed the next spring,) and which 614 $\frac{9}{60}$ bushels was received by said defendants' said agent, Morehouse, and placed in said warehouse where it now is.

5th. That said barley crop was good barley, except that it was badly stained.

6th. That said barley was delivered and received by said Morehouse, under and in pursuance of said agreement.

7th. That the defendants had been requested, before the commencement of this suit, by the plaintiff, to pay him for said barley, which they refused to do.

To each of which findings of fact the defendants duly excepted.

From the above facts the referee found as conclusions of law, that the bargain made by their agent, (Morehouse,) was a valid contract and binding upon the defendants, and that they are legally liable to pay the plaintiff for said barley so delivered, at the contract price of $2 per bushel, with interest from October 8, 1864, and which price amounts to the sum

of $1228.30, and which interest to the date of the report, amounted to the sum of $86, making in all the sum of $1314.30, for which last amount he ordered judgment in favor of the plaintiff and against the defendants, with costs.

To which conclusions of law and to each and every part thereof the defendants duly excepted.

The said referee declined to find other or different than above herein set forth.

The defendants appealed from the judgment.

*Angus McDonald,* for the appellants.

*T. R. Strong,* for the respondent.

*By the Court,* JOHNSON, J. The defendants, as the case shows, after the decision by the referee, excepted to each finding of fact, and also to the " conclusions of law, and to each and every part thereof." The exceptions to the findings of fact are idle and of no avail. The decision of a referee is always open to review upon the facts, in this court, without any exception. The court will always look into the evidence, if the question is raised, so far as to see whether there is evidence tending to prove the facts, or either of them, as found by the referee, and no exception is necessary to raise the question.

The exceptions to the conclusions of law are so general as scarcely to raise any question of law whatever. At most it can only raise the question whether any of the conclusions of law are justified by the facts found. There can be no doubt, in this case, that not only some, but all, the conclusions of law, found by the referee, are justified and flow from his findings of fact. And in regard to the findings of fact, upon a careful examination of the whole case it appears that there are none that are not fully sustained by the evidence on the trial.

The review must therefore be confined to the questions of

Lefler *v.* Field.

law raised in the course of the trial. The question as to whether the plaintiff intended to sell the barley as merchantable barley, was properly overruled. There was no question of fraud or deceit in the sale, in the case, and the question of intention was in no respect material. The material question in the case was, what contract the parties did make, and not what their intentions were in making it. The question at issue was whether the contract as made, was for merchantable barley or for good barley, badly stained. There was abundant evidence to show that the plaintiff's agent, who made the bargain, saw and examined the barley carefully, before the bargain was consummated, and there was no question before the referee, in respect to any misrepresentation of the quality of the barley by the plaintiff.

The referee also decided correctly, in excluding the evidence of the secret intentions given by the defendants to their agent Morehouse, in regard to the quality of the barley he was to purchase, unless such instructions were communicated to the plaintiff. Morehouse was confessedly their agent, for the purchase of barley, in the neighborhood where the plaintiff resided, and any private or specific instructions, in regard to particular kinds, or qualities, of barley to be purchased by him, could not affect third persons dealing with the agent, unless such instructions were brought to the knowledge of such persons. This is well settled. If the agent, in such a case, exceeds his authority, he is liable to his principals, and they must seek their redress against him, and not against persons with whom he has dealt, if such dealing is within the general scope of the authority. But it will be seen by looking into the case that this evidence was given afterwards, and in various ways, and as it is not stricken out, or expunged in any way, the presumption is that it was considered by the referee. So that the exception would be rendered nugatory even had it been well taken.

The question put to the plaintiff's witness and agent, upon his cross-examination, in regard to the fall in the mar-

ket price of barley, was properly allowed to be answered, and the exception to the ruling is not well taken. It was objected to as incompetent and immaterial. The objection was overruled, and the witness answered " twenty-five cents per bushel." This certainly was not material evidence upon the issue between the parties, as the market price of barley was not in dispute between them. As evidence upon the issue of contract or no contract, or of delivery and acceptance upon a contract, it may fairly be said to be incompetent and immaterial. But whether it was competent and material upon cross-examination, as having some bearing upon the conduct, and the entire credibility of the witness is another question. It is quite apparent from the case, that this question was put to the witness in reference to, and as bearing upon, the course he had pursued in the transaction, and to suggest a possible motive therefor. The rules of cross-examination allow a very considerable latitude in this direction, by way of testing and sifting evidence given by a witness on his direct examination ; they allow an inquiry into the interest, the motives, the inclinations and prejudices of the witness, his situation in respect to the parties, and the like. The power of cross-examination is justly regarded as one of the principal and most efficacious tests which the law has devised for the discovery of truth. (1 *Greenl. Ev.* § 446.) Here was a question calculated and intended, to draw the fact from the witness, that the fluctuations in the market price of barley after the bargain was first made or talked over, had rendered it unprofitable to, and against the interests of, his principals to have the bargain made obligatory upon them. I can have no doubt whatever that this was a proper question, on cross-examination.

It would clearly be a proper question to put to a party on his cross-examination, who should appear as a witness in his own behalf to disprove an agreement proved upon the other side. No one, I think, will question this. For the same reason it would be pertinent to any child or other relative of

a party, or to any one holding such relations to the party, that a partiality in his favor might be fairly presumed to exist.

The question whether the plaintiff had not broken the contract on his part by retaining twenty-five bushels of his crop, for seed, now insisted upon, was not raised upon the trial. No exception was there taken, and no suggestion made in regard to it. Had the question been raised upon the trial, any difficulty in regard to it might have been obviated by evidence of assent on the part of the defendants, or evidence of general usage, on the part of farmers in selling their crops to retain sufficient for seed or family use. The question not having been raised at the trial, cannot now be raised and considered.

Upon the findings of the referee the defendants' agent accepted what was delivered upon the contract and in fulfillment thereof. I confess I should have been better satisfied if the referee had found distinctly upon the questions, of the extent of the authority of the agent, in regard to the quality of the barley he was authorized to purchase, and of notice of the limitation to the plaintiff, both which questions seem to me to have been fairly raised by the pleadings and evidence. And also upon the question whether the barley in question was or was not merchantable barley. But it was the duty of the defendants, if they were not satisfied with the facts found, and desired other findings of fact in addition thereto, to move the court, before the time for excepting had expired, to send the case back to the referee to have him find one way or the other upon the other material questions of fact in issue and not passed upon. (*Brainerd* v. *Dunning*, 30 *N. Y. Rep.* 211. *Ashley* v. *Marshall*, 29 *id.* 494.) If nothing of this kind is done, the presumption arises that the referee has found all the material questions of fact against the defeated party. In case of such a motion, the time for taking and serving exceptions may be extended by order. (1 *N. Y. Rep.* 586.) It will not do in such a case for the

party to lie by until the settlement of the case before the referee, and then request him to make new or further findings, beside those contained in his report, as the referee then has no power to make new findings of fact, or to examine the case for any other purpose than to settle truly, what took place and was determined when he had jurisdiction of the case for the purpose of trial and determination.

The referee has found, in substance, that the barley was purchased as stained barley, but otherwise good, and that it was such an article.

I do not see that there has been any error committed by the referee, which is now available to the defendants, and the judgment must therefore be affirmed.

[MONROE GENERAL TERM, March 2, 1868. *E. D. Smith, Johnson* and *J. C Smith,* Justices.]