CARROLL *vs.* THE STATEN ISLAND RAILROAD COMPANY.

Even if a pressure upon a steam boiler in excess of the amount allowed by the government inspectors, by their certificate, to be used, is not legal negligence, under the act of congress of February 28, 1871, for the better security of life on board of steam vessels; yet, in an action in a State court, for damages, at common law, the court, or a referee, may properly hold that it is evidence of negligence, and sufficient evidence to warrant a finding of negligence in fact.

Where, upon the settlement of a case, before a referee, the defendant's counsel requested the referee to find in respect to a large number of specified questions of fact, and upon the refusal of the referee to do so, the counsel excepted,

Carroll *v.* The Staten Island Railroad Company.

and such requests and exceptions were contained in the case; *Held* that such exceptions were of no validity, and were not properly before the court, on appeal from the judgment.

There is no authority, in law, for the taking of exceptions, except upon the decision of questions of law; excepting also, the exceptions to the findings of the judge or referee upon the law contained in his report, in the decision of a cause, taken within ten days after notice of the judgment, pursuant to section 268 of the Code; and excepting, also, that class of exceptions required or allowed by the former practice in equity to the reports of masters in chancery, in taking and stating accounts, and otherwise.

If a party desires to have questions of fact passed upon by the referee, so as to present questions of law upon the finding or refusal to find in accordance therewith, upon which he can base exceptions, he should make such request to the referee before the submission of the cause to him; and then, if the referee does not comply with such request, the party can except to his finding or refusal to find or decide as requested, within ten days after notice of the judgment.

Such exceptions will then have the same force as the like exceptions to the refusal of a judge, at the circuit, to charge as requested.

But when the referee has omitted, in his report, to make such findings as will give force or point to the exceptions, the party may still, after notice of the judgment, and while the right to take exceptions to the findings of the referee in his report remains, apply to the court to send the case back to the referee, to pass specifically upon such questions, or to resettle his report.

In such case, the entry of judgment should be stayed, or the time to except extended, until the application is disposed of.

The provision, in rule 41, that "the judge or referee shall at the time of settling the case or exceptions, find on such other questions of fact as may be required by either party and may be material to the issue," relates to questions of fact, only; and this rule, as well as the proviso in section 268 of the Code, that the judge, in settling the case, "shall briefly specify the facts found by him, and his conclusions of law," are simply directory, and do not authorize the judge or referee to insert in the case new exceptions, or exceptions not in fact taken, when the judge could not accede to the request.

*It seems* that this proviso in section 268, inserted therein in 1851, was virtually repealed by the provision, inserted in section 267, in 1860, directing that "the decision of a judge shall be in writing, and shall contain a statement of the facts found, and conclusions of law separately," precisely as is required of referees by section 270 as amended in 1857.

This provision is imperative, and compliance with it is essential to the regularity of a report, either by a judge or referee.

An action against carriers of passengers, to recover damages for an injury sustained by a passenger through their negligence, being brought for the violation of a plain duty on the part of the defendants, to transport the plaintiff

with care and in safety, it is no defence thereto that the accident causing the injury occurred on *Sunday,* when the plaintiff was not travelling for any of the purposes allowed by the act for the observance of the sabbath.

If the obligations of the defendants, and the rights of the plaintiff, in such a case, rest on contract, the fact that the contract for the transportation of the plaintiff was made on *Sunday* will not exempt the carriers from liability for damages occasioned by their negligence.

APPEAL by the defendant from a judgment entered upon the report of a referee.

The action was brought to recover damages for personal injuries sustained by the plaintiff in consequence of the bursting of the boiler upon a steam ferry-boat of the defendant, called the *Westfield,* owned by the defendant, and employed in carrying passengers and freight between the city of New York and Staten Island. The injuries were alleged to have been caused by the negligence of the defendant, and by the negligent, improper and unskillful construction, condition or management of the boiler and machinery of the ferry-boat.

The referee reported in favor of the plaintiff for $2,250 damages.

*W. A. Beach,* for the appellant.

*D. Pratt,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The issue of negligence, made by the pleadings in this cause, was found by the referee in favor of the plaintiff. He found that the defendants were a corporation under the laws of this State, in July, 1871, and then were, and for a long time before had been, carriers for hire between the city of New York and the State of New Jersey, by means of steam ferry-boats from New York across the bay to Staten Island, thence by railroad across the island to the further shore thereof, and thence by other ferry-boats to New Jersey. That the steamer *Westfield,* belonging to said company, was, on the day aforesaid, and

Carroll *v.* The Staten Island Railroad Company.

for a long time had been, one of such ferry-boats for the carriage of passengers as aforesaid, between New York and Staten Island, and on said day, which was Sunday, was at her dock in the city of New York, loaded with passengers, and with steam up, about to start on her trip for said island. That the defendants so being such carriers of passengers, and so using the said boat, did not exercise all the care which it was possible for them to exercise in providing for the safety of passengers, but on the contrary so negligently conducted themselves in that behalf that, on the occasion aforesaid, and just before said boat was going to move from the dock, the steam boiler of said boat exploded or burst, causing the loss of many lives, and injuries to a large number of persons who had taken passage on said boat, whereby the plaintiff, who had taken passage on said boat for Staten Island, and was then on said boat, was seriously injured, bruised and scalded, &c.

The referee further finds that the immediate cause of such explosion was a pressure of steam of not less than twenty-seven pounds to the square inch, and a weakness of the boiler, caused by a longitudinal crack or cracks which extended nearly through from the inside to the outside of the iron plate or shell.

And the referee further finds that in June previous to the said accident, said boiler had been tested under the laws of congress, enacted in that behalf, with a hydrostatic pressure of thirty-four pounds to the inch, and that a certificate was thereupon given by the government inspectors, allowing the use of twenty-five pounds of steam pressure to the inch. That the said boiler, being about nine years old, required on that account greater caution and care in the management of steam, and that the defendants, by their engineer, did not exercise the care they were bound to exercise, in allowing a pressure in excess of the amount justified by the previous test and certificate.

Upon these findings on the question of negligence, the referee based the conclusions of law which involved and authorized the rendition of the judgment in the action.

In respect to the said findings, and so far as relates to the weakness of the boiler caused by a longitudinal crack or cracks which extended nearly through from the inside to the outside of the iron plate or shell, it appears that the referee, some months after the delivery of his said report, and after judgment had been rendered · thereupon, under the express authority and directions of the court, at Special Term, .did review and reconsider the evidence taken and received on the trial of said cause, and make a further or supplemental report as follows: "Pursuant to the order of this court, made on the 10th day of December, 1872, I find, by way of supplement to my report, and to the case as settled by me in this action, that the crack in the steam boiler, mentioned in said report, was a latent one, the existence of which was not known to the defendants. The evidence also preponderates in favor of the conclusion, and I therefore find, that prior to the explosion of said boiler, the existence of said crack could not have been discovered by the exercise of the highest skill, foresight and care, or by any test known and practiced by experts in the business of making and maintaining or managing steam boilers."

As it appears from the recital in the order directing the making of such supplemental report that such order was made with the consent of the plaintiff's counsel, I suppose we must consider that with such like consent the original report of the referee must be deemed amended and modified in conformity with such supplemental report, to the same effect as if the said original report had contained the same finding, in effect, in respect to the longitudinal cracks in the boiler in question, as are contained in such supplemental report, and in lieu of the finding on this subject in such original report.

Carroll *v.* The Staten Island Railroad Company.

It follows, therefore, that the judgment must stand, if it is sustained, solely upon the other specifications or findings of negligence in respect to pressure of steam in excess of twenty-five pounds to the square inch, with the attending facts stated in the report.

Upon the question whether there was not a pressure upon the said boiler of steam at the time of said explosion, in excess of twenty-five pounds to the square inch, there seems to be no dispute, and no conflict in the evidence, and I do not see, if we are asked to examine the case upon the evidence, why the referee's report upon the point that there was a pressure of steam of not less than twenty-seven pounds to the square inch is not fully warranted by the evidence. At least we cannot find as a question of fact that the referee's finding upon that point is clearly against the evidence, or the weight of the evidence; and if the allowance of a pressure in excess of twenty-five pounds to the square inch is not legal negligence under the act of congress, entitled "An act to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes," passed February 28, 1871, which I should be prepared to hold, if necessary, (*see Caldwell* v. *New Jersey Steamboat Co.*, 47 *N. Y.* 292,) yet I have no doubt that in a State court, and in such an action as this, at common law, the court, or a referee called to pass upon the facts, may properly hold that it is evidence of negligence, and sufficient evidence to warrant a finding of negligence in fact, as found by the referee in this case. Upon the facts, therefore, we must hold that this judgment is warranted by, and not in conflict with, the evidence.

It appears that on the settlement of the case before the referee, the defendants' counsel requested the referee to find in respect to a large number of specified questions of fact, and upon the refusal of the referee to do so,

it is stated that the counsel duly excepted, and these requests and exceptions are contained in the case.

These exceptions are of no validity, and are not properly before us for consideration. There is no authority in law for the taking of exceptions, except upon the decision of questions of law, occurring during a trial of a cause by the court or a referee, and except, also, the exceptions to the findings of the judge or referee upon the law contained in his report, in the decision of a cause, taken within ten days after notice of the judgment, pursuant to section 268 of the Code, and except, also, that class of exceptions required or allowed by the former practice in equity to the reports of masters in chancery, in taking and stating accounts and otherwise.

If the defendants' counsel desired to have these questions passed upon by the referee so as to present questions of law upon the finding or refusal to find in accordance therewith, upon which they could base exceptions, they should have made or presented such request to the referee before the submission of the cause to him, like requests to the court to charge or decide upon some point of fact or law at the circuit, before the submission of the case to the jury; and then, if the referee had not complied with such requests, they could duly have excepted to his finding or refusal to find or decide as requested, within ten days after notice of the judgment. (*Grant* v. *Morse*, 22 *N. Y.* 324. *Phelps* v. *McDonald*, 26 *id.* 82. *Nelson* v. *Ingersoll*, 27 *How.* 1. *Lefler* v. *Field*, 47 *N. Y.* 407.)

Such exceptions would then have the same force as the like exceptions to the refusal of a judge at the circuit to charge as requested, if the case had been tried at the circuit. But where the referee has omitted in his report to make such findings as will give force or point to his exceptions, the defendants' counsel might still, after notice of the judgment, and while the right to take exceptions to the findings of the referee in his report

remained, have applied to the court to send the case back to the referee, as suggested in the opinion of Judge Rapallo, in *Van Slyke* v. *Hyatt*, (46 *N. Y.* 265,) "to pass specifically upon such questions, or to resettle his report." In such case, as Judge Rapallo suggests, "the entry of judgment should be stayed, or time to except extended until the application is disposed of." (*See also Lefler* v. *Field*, 50 *Barb.* 413; *Brainerd* v. *Dunning*, 30 *N. Y.* 211, and *Ashley* v. *Marshall*, 29 *id.* 494.)

In *Beck* v. *Sheldon*, (48 *N. Y.* 369,) Judge Hunt says that "the refusal to find a material fact of which there is legal proof, and of which there is no proof to the contrary, is error in law;" and refers to *Putnam* v. *Hubbell*, (42 *N. Y.* 106,) *Mason* v. *Lord*, (40 *id.* 476,) and *Marvin* v. *Inglis*, (39 *How.* 329,) where the converse of the proposition was held as authority for the proposition. But the learned judge doubtless meant that the request must be duly made before the decision of the cause by a referee or a judge; and this, I think, is clearly within the statute, and in analogy with the practice in respect to exceptions taken at the circuit.

The provision in rule 41, "that the judge or referee shall at the time of settling the case, or exceptions, find on such other questions of fact as may be required by either party, and may be material to the issue," relates to questions of fact only, and this rule, as well as the proviso in section 268, that the judge in settling the case "shall briefly specify the facts found by him, and his conclusion of law," are simply directory, and do not authorize the judge or referee to insert in the case new exceptions, or exceptions not in fact taken, when the judge could not accede to the request. The latter proviso in the Code, inserted in section 268 in 1851, I have always supposed to be virtually repealed by the provision afterwards inserted in section 267, in 1860, directing that "the decision of a judge shall be in writing, and shall contain a statement of the facts found, and

conclusions of law separately," precisely as is required of referees by section 272, as amended in 1857. This provision is imperative, and compliance with it is doubtless essential to the regularity of a report, either by a judge or referee.

The case contains the motion papers used at Special Term on the motion to send the case back to the referee for resettlement, and to review his findings and pass upon the requests aforesaid.

This motion was the proper mode to present the question to the court under rule 41, and the provisions of the Code aforesaid, and the case shows that the order of the Special Term, so far as it denied said application, was duly appealed from to this court. Upon this appeal this court doubtless has the power to review the decision of the Special Term. The several requests aforesaid, it appears from said motion papers, were all respectively passed upon by the referee. Several of said requests were acceded to, in fact, and the report modified accordingly, and others were denied upon the ground stated, that they were not material. In respect to one of such requests the referee, afterward, in compliance with the order of the Special Term, amended his report by the supplemental report heretofore mentioned.

This court, as I understand it, was not asked, upon the argument, to review the decision upon the motion at Special Term. The case was brought on for argument upon the merits, on the record as it stood, and was so argued. These various requests, and their respective materiality, were not discussed on the argument, or in the points presented to the court as upon a review of the decision at Special Term. The points of the respective counsel do not ask the court to suspend a consideration of the case and pass upon these requests, and send back the case to the referee, upon the ground that error was committed at the Special Term, but in discussing the findings of the referee they ask the court to reverse the judg-

ment upon the merits. In this light I have examined the case. But, as this appeal from the order at Special Term is regularly before us, I think the order of the Special Term, so far as it is appealed from, should be formally affirmed.

The remaining question upon the merits arises upon the exception of the defendants to the referee's conclusions of law: "That the laws of the State for the observance of the sabbath afford no ground of defence to the action."

The referee finds that the explosion of the boiler which caused the plaintiff's injuries occurred on Sunday, and that he had taken passage on the said boat for Staten Island, in company with others, "for no definite purpose except innocent recreation and the enjoyment of the sea air."

The defendants' counsel insists that, as the plaintiff was not travelling for any of the purposes allowed by the statute on Sunday, he cannot maintain this action for the injury sustained. This statute forbids all travelling on Sunday, except in cases of necessity, charity, attendance upon religious worship, or in carrying the mails, or on express by order of a public officer, or in removing family furniture, when such removal was commenced on some other day. (1 *R. S.* 675, § 15, 1*st ed.* 2 *id.* 936, 5*th ed.* 1 *id.* 628, § 70, *Edm. ed.*)

This action is not brought to enforce an executory contract for servile labor on Sunday, or to recover compensation for such work, or otherwise to violate the law respecting the observance of Sunday, as was the case in *Smith* v. *Wilcox*, (24 *N. Y.* 353.) It is brought for the violation of a plain duty on the part of the defendants, as common carriers of passengers, toward the plaintiff, whose safety they were bound to guard, having received him as a passenger on board of their steamboat, which was at the time engaged and employed in carrying pas-

sengers from New York to Staten Island, for hire and reward.

If the obligation of the defendants and the rights of the plaintiff rest in contract, as the counsel for the defendants insist, the answer to their whole argument in this connection is contained in the language of Judge Wright, in the case of *Merritt* v. *Earle*, (29 *N. Y.* 120,) as follows : " It is not material whether the contract made was good or bad ; it was enough to entitle the plaintiff to recover, that the defendant, being a common carrier, had in his custody for transportation the plaintiff's property" (in this case his person) " and by his negligence, or in violation of his duty, it was lost." "This gave the plaintiff a right of action wholly disconnected from the statute relating to the observance of Sunday." It would be a great perversion of right and of law, in my opinion, to hold that a common carrier may invite and receive into his conveyance a passenger for transportation for hire on Sunday, and be freed from all such duty and responsibility for his preservation and safety on that day as is clearly due and required by law on the other six days of the week.

Such is not the law in Pennsylvania, as clearly held in *Mahony* v. *Cook*, (26 *Penn.* 342.) Nor does the Supreme Court of the United States regard it as sound law. (*See Phil. W. & Balt. R. R. Co.* v. *Phil. Steamboat Co.*, 23 *How. U. S. R.* 209, 218.) Nor is it, in my opinion, or ever will be, the law of this State.

The judgment and order should be affirmed.

[Fourth Department, General Term, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]