issue then the one-third should go to the other grandchildren, or, as he expressed it, to all of my grandchildren. Section 2727 of the Code of Civil Procedure permits a person interested in the estate to present a petition for an accounting. The petitioner shows that he is one of the children of a deceased grandchild of the testator, and the answer to the petition does not challenge his right based upon such relation. I am of opinion that he is within the purview of the section. In re Prout, 52 Hun, 109, 4 N. Y. Supp. 841; Fisher v. Banta, 66 N. Y. 468.

Order affirmed, with costs. All concur.

---

(68 App. Div. 38.)

### COLLIS v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

1. TRIAL—DISCRETION OF COURT—SENDING CASE TO VACANT PART OVER PROTEST OF COUNSEL.
   Where two trial terms were unoccupied when a case was called, it was within the discretion of the court to send it to either part, and his selection of one part, contrary to the wishes of defendant's counsel, was not the subject of an appeal.

2. LIBEL—MALADMINISTRATION OF PUBLIC OFFICE—LANGUAGE ACTIONABLE PER SE.
   A newspaper article charging maladministration of a public office is libelous per se, and a complaint alleging such publication is not defective because without an innuendo.

3. SAME—JUSTIFICATION—EVIDENCE.
   Where a newspaper article alleged that plaintiff· and another had "worked a huge grab" in the substitution of a surety company in which they were interested for other companies on municipal contracts, proof of the substitution was no justification for the statement, when it appeared that the substitution was by order of the proper municipal authority, and that plaintiff was not concerned therein.

4. SAME—PARTIAL JUSTIFICATION.
   Proof of the truth of a part only of a libelous publication is no justification.

5. SAME—CROSS-EXAMINATION—ERRONEOUS RESTRICTION.
   Where a newspaper article, made the basis of an action .for libel, alleged that plaintiff and another had corruptly obtained the substitution on municipal contracts of a surety company "run and officered by the sons" of such other party, and one of such sons had over objection testified for plaintiff that he had no connection with the surety company except as general counsel, refusal to permit full cross-examination as to the duties witness performed for, and the interest he thus acquired in, the company, was error.

6. SAME—MALICE—REASONABLENESS AND PRUDENCE.
   Where a newspaper article, made the basis of an action for libel, was published on information gained by reporters, the jury, in considering the question of the reasonableness and prudence of the publication, should consider all matters tending to prove the truth of the article which were within the knowledge of the reporters, and not merely such facts as appeared from the report of the reporters.

Appeal from trial term, New York county.

Action by Charles H. T. Collis against the Press Publishing Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The action was brought to recover damages for a libel published by the defendant on October 6, 1897, concerning the plaintiff and relating to his administration as commissioner of public works of the city of New York. The head lines and the beginning of the article sued upon were as follows:

"Collis and Platt Work a Hugh Grab.

"World Exposes Amazing Conditions in City Contracts—Boss Gets His Share— Through His Surety Company Run and Officered by His Sons—On Almost Every Contract—Other Sureties Rejected and His Fidelity and Deposit Company Substituted—Long Record of Favoritism—In Nearly All of 146 Contracts This Change is Made—Tracy, Boardman, and Platt the Concern's Counsel.

"The World has unearthed an extraordinary condition of affairs in the department of public works, of which Gen. Charles H. T. Collis is the commissioner."

Thereafter is a statement of what (defendant states) appears from an examination of 146 contracts, details being given with respect to the rejection of other sureties and the substitution therefor of the Fidelity & Deposit Company of Maryland, which is designated in the article as "Senator Platt's Company," the purpose being, as said in the headlines, to expose "a long record of favoritism." In addition to a general denial, the defendant pleaded justification and also two defenses in mitigation. Under the latter head, the answer averred that the defendant relied upon the facts published, believing them to be true, and published them in good faith, and in the interests of the public, without malice. When the case was called, there were two trial terms unoccupied, parts IX and X being vacant, and the court directed the case to be sent to part X for trial. The clerk having thereupon instructed the witnesses to attend in part X, to which they proceeded, the counsel for the defendant, who remained behind, in the absence of the plaintiff's counsel, objected to the case being sent to that part, and requested it to be sent to part IX, and his motion was denied, the court claiming the right under the rules to send it to any part that was vacant. Thereafter the plaintiff's counsel proceeded to open the case and examine the witnesses, without his attention being called to the fact that an objection had been made to the part in which the case was tried, and the trial continued, and the issues were submitted to the jury, with the result that a verdict was returned in favor of the plaintiff for $25,000. From the judgment thereupon entered the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John M. Bowers, for appellant.
John S. Wise, for respondent.

O'BRIEN, J. It would serve no useful purpose, and would unnecessarily extend the opinion, were we to set forth the entire libel, or state all the exceptions upon which the defendant relies for a reversal of the judgment; and, therefore, we shall merely give our conclusions upon what we consider the controlling features presented by the voluminous record.

With regard to sending the case to part X, we think the judge calling the calendar did not exceed his powers, it being entirely optional with him as to which of the vacant parts he would send the case to be tried. In the exercise of this discretion, he was not required to consult the wishes of counsel for either side; and as it is not suggested in what way the defendant was prejudiced or injured by the court's action, nor that it was injured at all, it is sufficient to say that the ruling made is not the subject of an appeal.

The defendant further objects that the complaint, having no innuendo, was defective, and invokes the rule of law that, where an article is capable of both an innocent and a defamatory meaning, there must be an innuendo to point out the defamatory meaning. We think, however, as did the learned trial judge, that, reading the article as a whole, it was defamatory and libelous per se, and there was therefore no need of an innuendo to point out what was intended to be charged by the language employed. On this subject it was said in Lewis v. Chapman, 16 N. Y. 369:

"There is no doubt that where the language of an alleged libel is ambiguous, and capable of being understood in an innocent and harmless, as well as an injurious, sense, its true interpretation is a question for the jury; but it is equally clear that if, upon an examination of the whole writing and comparison of its different parts, it appears to admit of no just construction except one which is injurious to the plaintiff, its meaning is to be determined by the court."

Here the article concerning the plaintiff related to the administration of his office, and, as said as early as Kinney v. Nash, 3 N. Y. 177, decided in 1849, words imputing the breach of some public trust are actionable. And in Hunt v. Bennett, 19 N. Y. 173, it was said:

"The publication not being privileged, nor susceptible of an innocent construction, the judge was not only right, but it was his duty to decide that it was a libel, and so charge the jury."

So, too, as to justification, we agree with the learned trial judge that the defendant wholly failed to establish it. Although there was a substitution of sureties, it appears, without contradiction, that neither Mr. Collis, Senator Platt, nor either of his sons, was in any way responsible for these, but, on the contrary, the changes were directed by the then comptroller. There was no foundation therefore for the charge that "Collis and Platt work a huge grab," which it was the purpose of the article to support. Were we to assume that the evidence established as true a portion of the article, it is not enough, as has frequently been held, to show that part of a libelous publication is true; but, to justify the libel, the proof must be as broad as the charge. Thus, in the early case of King v. Root, 4 Wend. 113, 21 Am. Dec. 102, the rule was approved that "all that is libelous in the publication must be justified. Damages must be given for such part, if any, as the defendants fail to support." And in Holmes v. Jones, 121 N. Y. 469, 24 N. E. 703, this rule was followed, where, in referring to a certain charge of the libelous article, the court said:

"Unless the defendant could justify that charge, even if it could have justified all the rest of the publication, the plaintiff would have maintained his action and been entitled to recover some damages."

So, also, in the recent case of Young v. Fox, 26 App. Div. 261, 49 N. Y. Supp. 634, it was said, citing Holmes v. Jones, supra:

"We must recall the rule that it is not enough to prove part of a libelous publication to be true, but the proof must be as broad as the charges."

We deem it unnecessary to discuss numerous other exceptions urged by the appellant, which, like those mentioned, we regard as not fatal to the judgment; but there are two relied upon which

relate to matters vitally affecting the defendant's rights upon the trial, and which, in our opinion, require a reversal. The first of these is with reference to the ruling of the learned trial judge in limiting the cross-examination of one of the plaintiff's witnesses. He had testified that he was a son of Senator Platt, and a member of the law firm of Tracy, Boardman & Platt, and that his brother was an officer of the Fidelity & Deposit Company of Maryland, and was then asked whether, during the years 1895 to 1898, he had personally any office or connection with the transaction of business or management of that company, and, under objection and exception, answered that he was general counsel of the company, had no office or other connection with it or its business management, but owned some of its stock, and that for many years he had had a slight acquaintance with General Collis. The next inquiry was whether his law firm had any interest in the company other than as counsel for it, and, under objection and exception, he replied, "No, no other; no sir." In cross-examination he was asked as to his first business with the company, but was not permitted to answer, and the defendant's counsel claimed: "It is proper for this cross-examination to show his entire connection with this company from the time it commenced business in this city and his firm became its counsel,—what were the characters of the duties he was asked to perform, what was the work he did, and what interest he thus acquired in it." The witness then interposed, "I hope your honor will let it in. I am ready to answer it all." The court, however, excluded the question, and also refused to permit the witness to state when his connection with the company began, by what officer and in what manner he was retained, for what purposes, what services he performed, and what compensation was paid to him. As pointed out by the appellant, the charge in the article sued upon was that the bonding business of the department of public works had been given to a corporation "run and officered" by Senator Platt's sons for his benefit, and that, although not called upon to disprove this, in view of the ruling that the article was libelous per se, the plaintiff evidently preferred to do so, and called this witness, who denied that he or his firm had any special interest other than as counsel in the business of the company. The plaintiff opened the way for a cross-examination of the witness by the defendant as to the matters concerning which the testimony was given. Certainly if there were no cross-examination, the result, especially in view of the expressed willingness of the witness to reply to all questions asked, would be to show the jury that not only was the article libelous per se, calling for justification by the defendant, but that, as to this particular charge, it was, as matter of fact, untrue. Under such circumstances, we think it was error to limit the cross-examination in the particulars mentioned. As said in Hardy v. Main, 56 Hun, 221, 9 N. Y. Supp. 253:

"When a witness is examined in behalf of one party, the other party to the action has the right to interrogate him concerning any material fact or circumstance which may tend to reduce the weight and effect of his testimony."

And, as further said in Lefler v. Field, 50 Barb. 412:

"The rules of cross-examination allow a very considerable latitude in this direction, by way of testing and sifting evidence given by a witness on his direct examination; they allow an inquiry into the interest, the motives, the inclinations, and prejudices of the witness, his situation in respect to the parties and the like."

Here the defendant had objected to the witness giving the direct testimony, having in mind, no doubt, that the plaintiff was not called upon to elicit such proof. All the more, therefore, when this objection was overruled, should a full cross-examination have been allowed, in order to define precisely the relations of the witness to the company.

The other exception which we regard as fatal to the judgment relates to the failure of the learned trial judge to include in his charge to the jury certain of the many requests of the defendant. The requests made cover no less than 13 pages of the printed record, and those to which we refer are not contiguous, yet they had a direct and vital bearing upon the question of damages which, in view of the other rulings, was in fact the single subject submitted to the jury. The verdict of $25,000 was large, and necessarily included exemplary or punitive damages. The court had charged:

"You are to consider all of the circumstances of the case, the fact that he was a public officer, the nature of the charge made against him, the extent of the circulation of the paper that made the charge, and then you are to say what sum will compensate him for the injury. * * * But you may go further than that. If you believe that the charge was made with bad motives, * * * you may award punitive or exemplary damages. The defendant sets up as mitigation in defense that it acted on good information, information that a reasonable man would have followed. You may consider that point in determining whether you will award exemplary damages or not. * * * Did the defendant act as a prudent man would have acted under the circumstances or not, is for you to say. Did it exercise due care in publishing the article that it did publish on the information that it received from its two newspaper employés?"

There had been introduced in evidence upon the trial not only the bids or proposals of contracts which the article stated had figured in the alleged favoritism, but other facts relating to the approval of sureties by the city authorities, and also correspondence upon the subject which passed between the commissioner of public works and the comptroller. These matters had formed the basis of the report of the reporters, and were referred to in the article. The counsel for the defendant, therefore, excepted to the charge of the court upon the subject of punitive damages, and requested the court to instruct the jury "that all matters tending to prove the truth of the charge on which the defendant relied, including letters passing between the commissioner of public works and the comptroller * * * are matters which they may consider upon that question." This was refused, and defendant excepted. Exceptions were also taken to the refusal of the court to charge "that in determining the question of mitigating circumstances the jury are entitled to take into consideration the fact of such contracts being correctly set forth, and the inference that an ordinary and reasonable and careful person would naturally draw therefrom," and "that, if the jury

should find that the article complained of or any part of the same submitted to them is not substantially true, it is their duty to take into consideration, in mitigation of damages, the entire evidence in the case." Although the court had said the jury should consider "all of the circumstances," reference was then made to compensatory damages, whereas, upon the subject of punitive damages, the jury was expressly restricted to the consideration of the report of the reporters, the court stating that the article was published on that information. Thus the jury were bound to consider only whether the defendant had acted with prudence in publishing the article upon the report submitted by the reporters, which, of course, embodied merely the conclusion of the reporters upon all the facts. connected with the substitution of sureties. What the defendant requested, and what it was entitled to, was that the jury might be permitted, in determining whether the publication was reasonable and prudent, to consider the facts themselves upon which the report of the reporters was based. As argued by the appellant, one of the reporters who wrote the article sued upon became "the arm of the paper itself," and the question was, "Were his deductions in any degree justified by the records he examined as they were produced?" We also agree with the appellant that "in defeat or mitigation of exemplary damages the defendant may introduce any evidence of which the legitimate tendency is to show that he was not actuated by a wanton or malicious motive"; and this is the rule stated in Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 492, affirmed on opinion below 137 N. Y. 599, 33 N. E. 743. Similarly, in Heaton v. Wright, 10 How. Prac. 83, it was said:

"A defendant in slander may now * * * give in evidence to reduce the amount of damages any .or all facts and circumstances which have a legitimate tendency to disprove malice, or show that the truth of the charge was probably or properly inferable, and even the truth of the charge itself."

In Hatfield v. Lasher (a leading authority) 81 N. Y. 246, the court says (quoting from Bush v. Prosser, 11 N. Y. 347):

"The defendant has a right to prove the absence of malice in mitigation of the verdict, and to do this it is indispensable to prove that he believed and had some reason to believe the charge to be true as made. There are but two conceivable modes of doing it,—one by proving that he received such information from others as induced him to believe the charge to be true, the other by showing the existence of facts within his knowledge calculated to produce such a belief."

In the case at bar the defendant not only gave proof that the reporters had furnished information as to the charge published, but also gave evidence as to the facts which, as claimed, were calculated to form a reasonable basis for the charge. The court, however, as stated, limited the jury to the consideration of the information given by the reporters, whereas the defendant was entitled to have the jury consider, in awarding punitive damages, whether, from all the evidence presented, including the correspondence referred to, the defendant, acting as a reasonably prudent person, had justification for making the charge, or had reasons for believing it true.

Our conclusion therefore is that the exceptions relating to the cross-examination, and to the refusal to charge as requested upon the subject of punitive damages, require that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.