OSTERHELD v. STAR CO.

(Supreme Court, Appellate Division, Second Department. October 6, 1911.)

1. PLEADING (§ 364*)—ANSWERS.

Defendant published a newspaper article concerning plaintiff, a Methodist minister, charging that plaintiff's wife had left him because of cruel and inhuman treatment, and had threatened to sue for divorce for adultery. Plaintiff in his complaint based his right to recover solely on the portion of the article alleging that he was charged with adultery, omitting any reference to the charge of cruel and inhuman treatment. Defendant in its answer set up the entire article, and undertook not only to justify by appropriate allegations, the statements not complained of, but to plead them by way of mitigation of damages. *Held*, that such statements charging plaintiff with cruel and inhuman treatment were properly pleaded in mitigation, and that the court erred in striking them out as scandalous and irrelevant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1156–1162; Dec. Dig. § 364.*]

2. LIBEL AND SLANDER (§ 60*)—ACTUAL DAMAGES—MITIGATION.

In an action for libel, actual damages are not subject to mitigation by proof that the publisher honestly believed the statement to be true, was free from improper motives, or was misled by information derived from a reliable source.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 160; Dec. Dig. § 60.*]

3. LIBEL AND SLANDER (§ 60*)—PUNITIVE DAMAGES—MITIGATION—EVIDENCE.

In an action for libel, evidence of the publisher's belief in the truth of the statement that he was free from improper motives, or that he was misled by information derived from reliable sources, may be shown in mitigation of punitive damages, or to show that no such damages should be allowed.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 160; Dec. Dig. § 60.*]

4. LIBEL AND SLANDER (§ 119*)—COMPENSATORY DAMAGES.

Compensatory damages in an action for libel are limited to actual damages, though the jury, in awarding them, is not confined to the in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jury to general reputation, but may award compensation for injured and outraged feelings.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 119.*]

5. LIBEL AND SLANDER (§ 110*)—EVIDENCE—ACTS OF IMMORALITY.

Where a person sues for a libel charging specific acts imputing unchastity, though the defendant may be unable to justify and show the truth of the particular publication, he may show other specific acts of unchastity with other persons, and is not confined to proof of plaintiff's general reputation for unchastity.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 110.*]

6. LIBEL AND SLANDER (§ 111*)—EVIDENCE.

Where defendant published an article stating that plaintiff's wife charged plaintiff with cruel and inhuman treatment, and was also about to sue for divorce for adultery, defendant was entitled to have its reporter, who interviewed plaintiff's wife as to the proposed divorce, state what was said by the wife on that occasion, and it was error to limit the evidence to categorical answers as to whether the wife, in substance, made the statements pleaded in mitigation of damages, under the rule that defendant may give in evidence to reduce damages any and all facts and circumstances which have a legitimate tendency to disprove malice or show that the truth was probable, or properly inferable, or even the truth of the charge itself.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 307–314; Dec. Dig. § 111.*]

Burr, J., dissenting, and Hirschberg, J., dissenting in part.

Appeal from Trial Term, Queens County.

Action by Dudley Oliver Osterheld against the Star Company. From a judgment for plaintiff and from an order denying a new trial, and from an order striking portions of defendant's answer as irrelevant and scandalous, it appeals. Reversed.

See, also, 142 App. Div. 944, 127 N. Y. Supp. 1135. .

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Clarence J. Shearn, for appellant.

James M. Gray (Joseph E. Owens, on the brief), for respondent.

WOODWARD, J, The verdict for $25,000 damages in the plaintiff's favor is so excessive that in our opinion the judgment should be reversed, and a new trial ordered.

It is within the province of this court to reduce the recovery, but there has been such apparent confusion, as it seems to us, in the minds of counsel and in the rulings of the court upon certain questions involved in this case that we believe the ends of justice will be promoted by a new trial, and it will not be amiss at this time to discuss some of the questions raised for the guidance of counsel and court on such a retrial of the case.

The defendant published in its newspaper the following article of and concerning the defendant:

"Osterheld's Wife to Sue for Divorce.

'A Hundred Reasons,' She Says; 'Humiliation Because of Women Is One.'

"She Was His Inspiration.

" 'I Loved Him, but Women of Church Have Turned His Head.'"

"Mrs. Mary Osterheld, wife of the Reverend Dudley Oliver Osterheld of the Methodist Episcopal Church of Ozone Park, Long Island, whose domestic troubles were heard before Supreme Court Justice Garretson, in Flushing, on Saturday, declared last night she would bring divorce proceedings against her husband as soon as her attorney was able to draw up the papers.

"Mrs. Osterheld was at the home of her brother, George Schroeder, No. 365 Grove Street, Brooklyn. It was here last week that the papers were served upon her in writ of habeas corpus suit wherein the minister tried to recover their two children whom she is said to have kidnapped in January last. The house is a very neat looking one and does not bear out the impression made by the minister, who said he did not want his children in such a place.

" 'I will never live with my husband again,' said Mrs. Osterheld. 'There were a hundred reasons for leaving him. The principal one was his inhuman treatment and the humiliation I suffered. When I met him he was an uneducated man. He used to call me his inspiration. I induced him to study because I loved him. We were married six years ago. The first year we were forced to live on his salary of $350 a year as a lawyer's clerk.

" 'Then he studied for the ministry, and two years ago was fully ordained. Ambition seized him and he threw himself into any crusade, such as the one against the liquor dealers, although his father was one and his brother is one. He never remained home at nights and humiliated me by his attentions to other women. The women of the church turned his head. As for money, I had no clothes and little food. He never appeared satisfied unless he had a flock of women about him.

" 'I know what the statutes of the State require to obtain a divorce, and I am going to sue for one, and when the testimony is heard in Court, the Rev. Dudley Oliver Osterheld will be shown in his true colors.'      •

"Mrs. Osterheld is a refined little woman with a sweet but determined countenance. She is particularly incensed against the women of her husband's congregation, saying they really were responsible for the separation."

In his complaint the plaintiff set forth as libelous the following excerpt from the entire article:

"Rev. Osterheld's Wife to Ask Decree.

"Mrs. Mary Osterheld, wife of the Reverend Dudley Osterheld, of the Methodist Episcopal Church of Ozone Park, Long Island, whose domestic troubles were heard before Supreme Court Justice Garretson in Flushing, on Saturday, declared last night she would begin divorce proceedings as soon as her attorney was able to draw up the papers."

"I know what the statutes of the State require to obtain a divorce, and I am going to sue for one, and when the testimony is heard in court, the Rev. Dudley Oliver Osterheld will be shown in his true colors."

He thereby based his right of recovery simply on that portion of the article whereby it is alleged he was charged with adultery, omitting any reference to the other portions of the same article charging him with cruel and inhuman treatment of his wife, and other dereliction of his duties as a husband and father. These omitted statements, if untrue, were certainly libelous, and a fair inference to be drawn from the omission to complain of their publication is that the plaintiff sought to avoid judicial inquiry into their truth.

[1] In its original answer to the complaint, the defendant, among other things, not only set up the entire article and undertook not only

to justify by appropriate allegations the statements not complained of, but to plead them also by way of mitigation of damages.

The plaintiff moved at Special Term to strike out these allegations, as well as others contained in the answer. The motion was granted on the ground that the matter was scandalous and irrelevant. This appeal brings up for review, not only the judgment entered on the verdict, but also the order of the Special Term pursuant to the provisions of section 1316 of the Code of Civil Procedure.

The defendant has at no time attempted to justify that portion of the article complained of whereby the plaintiff is inferentially charged with the commission of adultery. It does, however, contend that it should have been permitted to have pleaded the entire article, and to have shown by way of reduction and mitigation of damages the truth of the statements contained in the balance of the article. On the trial, as the pleadings stood, the defendant was confined by the rulings of the court to asking the reporter who interviewed the wife whether the wife made to her the statements contained in the excerpt set forth in the complaint. It is manifest that if it were competent, either in reduction or mitigation of damages, to prove the entire publication and the truth of the portions not complained of, the defendant should have had the benefit of such proof. It is inconceivable that a verdict of the amount given could have been recovered had the defendant been able to establish the truth of the statements made, particularly as to the charge of cruel and inhuman treatment.

In the very outset of the discussion as to the relevancy or irrelevancy, competency or incompetency, of evidence of this character, it is necessary to keep clearly in mind the distinction between compensatory and punitive damages, both recoverable in proper cases for libelous publications.

[2] A person libeled is always entitled to recover his actual, otherwise termed "compensatory," damages. There can be no mitigation of actual damages. Wuensch v. Morning Journal Ass'n, 4 App. Div. 115, 38 N. Y. Supp. 605; Young v. Fox, 26 App. Div. 261, 278, 49 N. Y. Supp. 634. No matter how honest the publisher may have been in his belief in the truth of the statement made, or how free from improper motives, or how he may have been misled by information derived from reliable sources, nevertheless none or all of these things can reduce the award for actual or compensatory damages.

[3] On the other hand, all these facts become and are very material on the question whether the jury shall go beyond compensatory damages, and award something in addition by way of punishment. Any legitimate and relevant fact tending to show good faith in the publisher may, therefore, be shown in mitigation—as an excuse for publishing the libel. This is mitigation of damages.

[4] Although the injured party is entitled to recover all his actual or compensatory damages, nevertheless the recovery, so far as such damages are concerned, should be confined to the actual damages. When a person is wrongfully libeled, what are the elements going to make up his actual damages? The recovery for actual damages is not confined to the injury to general reputation, although that may con-

stitute a very large element of the injury. The jury may, and probably in most actions for libel do, award compensation as well for injured and outraged feelings. The mental suffering naturally experienced by one whose honor, integrity, and character is unjustly attacked, and who is humiliated in the community, and whose good name is despoiled, is no inconsiderable element in the amount of actual damages to be awarded for a libelous publication. It follows as the day the night that if the person libeled is an abandoned character, if he or she lacks the sensibilities of a pure and upright person, such a person necessarily suffers less in mind than those who possess such qualities.

[5] It has accordingly repeatedly been held that where a person sues another for libel, charging certain specific acts imputing unchastity, although the defendant may be unable to justify and show the truth of the particular publication, nevertheless the defendant may show other, different, and specific acts of unchastity with other persons, and is not confined to proof of general reputation for unchastity. Smith v. Matthews, 21 Misc. Rep. 153, 47 N. Y. Supp. 96; Ford v. Jones, 62 Barb. 484; Gulerette v. McKinley, 27 Hun, 320; Young v. Johnson, 46 Hun, 164, affirmed in 123 N. Y. 226, 25 N. E. 363. In Smith v. Masten, 15 Wend. 270, the action was one of a husband against another for debauching his wife. A new trial was granted on the ground of newly discovered evidence consisting of facts showing the plaintiff himself had been guilty of illicit relations with a woman not his wife. The court said:

"If the plaintiff was in the habit of improper intimacy with other women, his sense of moral propriety and regard for chastity could not be much offended by the loss of virtue in his wife. * * * It is true that the alleged misconduct of the plaintiff took place since the elopement of his wife, but as damages were recovered by him for his wounded feelings, and the destruction of his domestic happiness, not only up to the time of the commencement of the suit, but until the trial, it would have been proper for defendant to have shewn that at any time during the said period he had been guilty of improprieties of the same character with those committed by the defendant."

In Gulerette v. McKinley, 27 Hun, 320, the action was for an assault with intent to rape, and it was held that, the injury to the plaintiff's feelings being an element of damages for which she was entitled to compensation, specific acts of lewdness on her part with other men might be shown by way of limiting damages. The court in this case said that evidence of this kind "tended to reduce the actual damages sustained by the plaintiff," and was admissible, although not specifically pleaded, citing Wandell v. Edwards, 25 Hun, 498, which, in turn, cites with approval Bracy v. Kibbe, 31 Barb. 273, and White v. Murtland, 71 Ill. 250, 22 Am. Rep. 100. See, also, Crandall v. Barron, 57 Hun, 259, 11 N. Y. Supp. 164, affirmed 127 N. Y. 690, 29 N. E. 150; Allen v. Besecker, 55 Misc. Rep. 366, 105 N. Y. Supp. 416; Watry v. Ferber, 18 Wis. 502, 86 Am. Dec. 789; Mitchell v. Work, 13 R. I. 645. In Gressman v. Morning Journal Association, 197 N. Y. 474, 480, 90 N. E. 1131, 1133, the court held that damages given as compensation in libel cases should be precisely commensurate with the

injury, but, as the amount of damages is peculiarly within the province of the jury, the jurors may consider how far the truth of portions of a libelous article tend to show that the plaintiff ought not to have that amount of compensation, which he might justly claim if his reputation had been unaffected by the facts proved. The court, among other things, said:

"If some of the things said of plaintiff were shown to be true, their truth, if establishing misconduct, should be allowed to affect the amount of damages, which otherwise the jurors would be minded to award. Damages given as a compensation should be precisely commensurate with the injury."

The court further said (197 N. Y. 481, 90 N. E. 1133):

"In this case, while the proof falls short of establishing the charge of insanity, or the charge that the plaintiff fell in love with the patient, to her undoing, evidence was given with respect to her actions which, if the jury believed it, would justify the conclusion that she had been indifferent to her reputation, and had conducted herself in such ways as to provoke public comment. There was proof of facts that showed that her mind had been affected by her troubles, and also of facts tending to prove some part of the statement about her conduct with Lacy. While they did not justify the publication of the article, they might bear upon the amount of the compensatory damages."

In the case of Young v. Fox, 26 App. Div. 261, 278, 49 N. Y. Supp. 634, 647, Judge O'Brien said:

"But in a case where a publication consists of more than one libelous statement, and the defendant is justified in offering in evidence in mitigation of damages the partial truth of the libel, and such facts are to be considered by the jury in mitigation of damages, it would seem to me to follow that such facts are provable to decrease the damage which would have been sustained by the plaintiff by the publication as a whole if the defendant had failed to prove the truth of any of the facts alleged which constituted the libel."

Let us apply these principles of law to the circumstances of this case. The defendant published what purported to be the statement of the plaintiff's wife in which she charged her husband, among other things, with cruel and inhuman treatment, and also with adultery. The plaintiff takes exception to the charge of adultery. He does not complain of the charge of cruel and inhuman treatment of his wife, the woman he has taken the solemn vow to love, honor, cherish, and respect. If he is guilty of the cruel and inhuman treatment specifically alleged in the original answer, then the plaintiff is simply brutal. If the defendant can establish the truth of the allegations of cruel and inhuman treatment set up, such facts would justify a jury in finding the plaintiff was so lacking in the ordinary sensibilities of man that he could not have greatly suffered in mind by the publication of the additional charge of adultery. Some of the particular acts of cruelty alleged in the original answer are of such a grave and serious character that to some minds the commission of adultery might seem the lesser offense. The commission of adultery, and cruel and inhuman treatment of the wife, are gross violations of marriage duties and obligations, and, where both are charged in the same publication, we can discover no good reason why in an action for libel charging the falsity of one part of the article the truth of the remaining part may not be shown, not by way of justification of the part which is false,

but as showing the plaintiff has not, in fact, suffered, and should not recover the same damages he otherwise would be entitled to recover if the whole were false.   Such evidence is technically neither justification nor mitigation, but simply evidence limiting the recovery for compensatory damages to the actual damages sustained, and works no hardship on the plaintiff.

We have asserted, and we believe correctly, that the statement that the plaintiff had been guilty of cruel and inhuman treatment of his wife, and had committed adultery, appearing in the same article, are not disconnected statements, but all relate to his fidelity to his marriage vows.   If so, then evidence of the truth of portions not complained of is competent.

In the case of Holmes v. Jones, 147 N. Y. 60, 68, 41 N. E. 409, 412, 49 Am. St. Rep. 646, the New York Times published an article charging the plaintiff with presenting an extortionate bill, and with intoxication, in connection with the funeral of Gen. Grant.   On the trial the plaintiff omitted to read to the jury the part of the libelous article which charged extortion, but put in evidence only that portion which alleged intoxication.   The defendant put in evidence the whole article, and gave evidence to justify the charge of intoxication, and also offered to prove in mitigation of damages the truth of the alleged libel relating to the subject of extortion, but the evidence was excluded.   This was held error by the Court of Appeals.   Chief Judge Andrews, among other things, said:

"It is well settled that a defendant cannot show in mitigation of damages for a specific libel other and disconnected immoralities, but can attack only the plaintiff's general character.   But the charges in the article were not disconnected and independent in any proper sense, and we think it plain in reason that the plaintiff ought not in justice to recover punitive damages for a misstatement in the article as to his intoxication, if it appeared that his conduct in other matters in the transaction to which the charge related had been reprehensible, and when he himself had provoked public discussion. The conduct of both parties in the whole matter should have been permitted to be shown, so as to aid the jury in determining the extent of the damages to be awarded."

As was said in Gulerette v. McKinley, 27 Hun, 320, as these facts "tended to reduce the actual damages sustained by the plaintiff," they were admissible, although not specifically pleaded.   Nevertheless it is probably the better practice to set them forth in the answer.

If the same facts are relied on in "mitigation" of exemplary damages, then, under the provisions of section 536 of the Code of Civil Procedure, it would seem necessary to set them up in the answer.   It provides that in an action to recover damages for a breach of promise to marry, or for a personal injury, etc., the defendant may set up facts tending to mitigate or reduce the plaintiff's damages "if they are set forth in the answer."   We are therefore of the opinion that the defendant should have been permitted to set forth in its answer, and to give evidence on the trial of, the entire article, and also to have pleaded and given evidence of the truth of those facts stated in said article tending to show the plaintiff faithless to his duties and obligations as a husband in other respects than those involving the charge

of adultery. But the answer and the proof on such branches of the case should be confined to those matters.

The original answer, portions of 'which were struck out by the Special Term order entered January 13, 1909, contained other matters which were properly characterized as scandalous and irrelevant. The order so appealed from should be modified in the manner indicated.

[6] We think the trial court also erred in refusing to permit the reporter who interviewed the plaintiff's wife in relation to the proposed divorce proceedings to state what was said by her on that occasion, and limiting the evidence to categorical answers as to whether Mrs. Osterheld made, in substance, the statements pleaded in mitigation of damages. The purpose of such evidence is to show that the defendant believed the truth of the statements made, and acted in good faith in publishing them. The evidence shows that the reporter who interviewed the wife was sent by the defendant to investigate and report, and that she did so. The evidence was therefore competent and material as bearing on mitigation of damages. Did she, as the agent and representative of the defendant, act in good faith? Did she believe the statements made to her by the wife? Had she the right to rely on those statements? Were they made in a manner and under circumstances which carried evidence of their truth? These were all pertinent considerations in determining what weight and reliance should be placed by the jury on her testimony.

To exclude the evidence of what was said, the language used, and the circumstances under which the statements were made, and to confine the evidence to answers of "yes" and "no" to the questions as to whether or not the wife stated in substance the matter pleaded in the answer, we are of the opinion operated to deprive the defendant of the full benefit of the partial defense pleaded. We need but refer briefly to the record in the case to show the rulings of the trial court in this respect.

Viola Rogers, the reporter who wrote the article in question, was called for the defendant, and was asked:

"Q. Is that the lady whom you saw (referring to Mrs. Osterheld)? A. That is Mrs. Osterheld. Q. Will you please tell me what she said to you? By Mr. Gray: Objected to. Q. What did she say to you to the questions you asked her? By Mr. Gray: Objected to. The utmost that can be shown in mitigation of damages is the particular statements alleged to have been made by Mrs. Osterheld, and pleaded. I think the form of question should be whether or not she said these particular things. The Court: I think that is all you are entitled to. * * * By Mr. Towns: We don't need to plead everything in extenso, we are entitled to show from the surrounding circumstances. The Court: If you had pleaded in this answer that the facts stated in the article were obtained from this plaintiff's wife, any general statement of that kind, I think that under it you perhaps would have been entitled to show the whole conversation, but when you particularize, as you have here, that you obtained from her just certain facts, I think you are confined to those facts. * * * I exclude all except that portion which you have put in your answer. By Mr. Towns: Exception. Q. Did Mrs. Osterheld, the wife of the plaintiff, whom you identify now as the lady sitting here, did she at the time of that interview among other things say to you that she would bring divorce proceedings against the plaintiff as soon as her attorney was able to draw the papers, or words to that effect? A. She did say to me. I asked the question— Q. Confine yourself to the divorce proceedings. A.

This was after Mrs. Osterheld had told me the entire story— Q. Just give her words. The Court: That is excluded. By Mr. Towns: Exception. By Mr. Gray: I think the question may fairly say (be) whether she said that in substance. The Court: Yes; and then proceed to the next paragraph. By Mr. Towns:'Exception. By Mr. De Witt: Does the court rule that we can only ask these as direct questions calling for 'yes' or 'no'? The Court: I so hold. 'Did Mrs. Osterheld say—' then quote. By Mr. De Witt: Exception."

The defendant may "give in evidence to reduce the amount of damages any or all facts and circumstances which have a legitimate tendency to disprove malice, or show that the truth of the charge was probable or properly inferable, and even the truth of the charge itself." Heaton v. Wright, 10 How. Prac. 83; Collis v. Press Pub. Co., 68 App. Div. 38–46, 74 N. Y. Supp. 78; Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 491, affirmed on opinion below, 137 N. Y. 599, 33 N. E. 743; Hatfield v. Lasher, 81 N. Y. 246; Bush v. Prosser, 11 N. Y. 347.

We think the trial court failed, by its rulings, to give the defendant the full benefit of this rule.

These considerations lead to a reversal of the judgment appealed from, and obviate the necessity of discussing the other points raised on this appeal.

The order of January 13, 1909, is modified in the particulars indicated, and the judgment appealed from is reversed, and a new trial ordered, costs to abide the event.

Judgment and order reversed and new trial granted, costs to abide the event, and the order of January 13, 1909, modified in accordance with opinion of WOODWARD, J., in which JENKS, P. J., and RICH, J., concur. HIRSCHBERG, J., concurs except in the statement that the verdict is excessive. BURR, J., dissents.