EDWARD B. HAINES, PLAINTIFF IN ERROR, v. MAMIE SCHULTZ, DEFENDANT IN ERROR.

1. The liability to punitive damages springs from the wrongful motive of the defendant, and where such motive is not inherent in the offence which fixes his liability, plaintiff must present some proof from which it may be legally inferred.

2. Where libelous language is inserted in a newspaper by a reporter, without the knowledge or consent of the proprietor, the latter is liable to the extent of compensatory damages; he can, however, be visited with punitive damages only upon proof from which his approval of his employee's conduct may be legally inferred.

In error to Passaic Circuit.

Argued at February Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and GARRISON.

For the plaintiff in error, *John W. Griggs.*

For the defendant in error, *Z. M. Ward.*

The opinion of the court was delivered by

GARRISON, J.    The defendant below, who is the proprietor of the *Morning Call,* was sued in libel for uttering the following language of and concerning the plaintiff:

### "HOUSE ROBBED.

#### "A YOUNG LADY BOARDER SUPPOSED TO KNOW SOMETHING ABOUT IT.

"Last night, while Mr. and Mrs. Richard Krowley were at Little Coney Island, their house, No. 3 Hamburgh avenue, was entered by some one who got away with a considerable amount of clothing.   Mr. Krowley is of the opinion that a young lady boarder named Mamie Schultz knows something about the theft.   The girl has been a boarder at the house for about seven weeks; and according to Dick's statement Mamie had a number of admirers, and on several occasions she has stayed out late at nights, and no later than last Sunday night she climbed through the window of Mr. and Mrs. Krowley's sleeping apartments, and Dick is of the opinion that she gained an entrance through the same window last night.   On entering the house Mrs. Krowley discovered a bureau drawer and a clothes closet open and to her surprise found that the house had been ransacked and a large number of pieces of her underclothing, together with ribbons and other articles, were missing.   Dick visited the police station and notified Captain Bimson, who advised him to go before the recorder this morning and make a complaint."

The testimony shows that this article was written by a reporter in the employ of the defendant, and that it was inserted in the paper without defendant's knowledge, his first intimation of it being the service upon him of the declaration in this cause.

No special damages were shown.

The plaintiff recovered a substantial verdict against defendant.

Five exceptions taken by defendant at the trial are the subject of as many assignments of error.

The first is upon the refusal of the court to order a nonsuit at the close of plaintiff's case, for alleged failure of proof. This exception may be dismissed with the remark that the question as to whether the language published tended to disgrace the plaintiff, was properly left to the jury.

The other assignments are based upon exceptions to the charge of the court, and are addressed to that portion of the charge on which the law as to exemplary damages is stated.

The fourth assignment is as follows:

"But the defendant says, 'I personally had no hand in this.' That is true, but it appears that Mr. Keegan, his reporter, wrote it and had it inserted in the newspaper, and that from the time it was written up to the present day the defendant has never had a word of blame for Mr. Keegan, and Mr. Keegan still remains in his employ. So far as appears, his conduct is approved by his employer. There is nothing in the case to show that it is disapproved. If you believe, then, that Mr. Keegan's conduct is approved by his employer in this matter, you have a right to see what Mr. Keegan's conduct was upon this question of punishment."

This language occurs in the charge of the court after the rules for the admeasurement of compensatory damages have been announced to the jury.

The general subject of exemplary damages is introduced with the following remark: "But when you have determined what sum you will award her for compensation, you ask yourself, 'Will that sum punish the defendant adequately for his conduct?' You turn then to his conduct and see what it is, whether it will call for any punishment beyond what the sum that may be awarded Mamie Schultz as compensation will inflict." Then follows a series of instructions as to the allowance of punitive damages, one of which is the exception under consideration.

It will be noticed that the proposition laid down by the court is not alone that the defendant may be visited with exemplary damages for language inserted in his paper, although without his knowledge or consent; but that the imposition of punishment in damages will be controlled by the same considerations which fix his liability for the publication, unless the defendant adduces proof of his *dis*approval of the libelous article. In other words, that the defendant may be mulcted in punitive damages upon the same proof which established his liability for compensatory damages, unless he shows or it appears that he disapproved of the act of his subordinate.

The liability of the defendant to respond, both in compensatory and exemplary damages, in a proper state of the evidence, is not questioned. It is the proposal to relieve the plaintiff of the burden of proof and to transfer it to the defendant that invites discussion.

Proprietors of newspapers are unquestionably liable in law for whatever appears in their columns. Libelous publication is a wrongful act; and when to a wrongful act we add testimony from which a wrongful motive can be inferred, punitive damages may be inflicted.

But the maxim *respondeat superior* is a rule of limitation as well as of liability. If a principal must, on the one hand, answer for his agent's wrong-doing, on the other hand his liability is circumscribed by the scope of his agent's employment, unless there be proof of a ratification by him of his agent's misconduct.

No rule of law is better established than this.

The same principle applies, and with equal force, to the doctrine of exemplary damages.

Without stopping to review the history of this class of so-called damages, it is sufficient to say that the right to award them rests primarily upon the single ground—wrongful motive. The engrafting of this notion on to personal suits has resulted in an anomalous rule, the doctrine of punitive damages being a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. But,

whether we regard it in the one light or the other, it is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite. But in legal contemplation previous intent is presumed from ratification, and *e converso* proof of ratification must be made where a previous intent is not presumed.

The learned judge correctly apprehended this rule when he placed the defendant's liability to punishment in damages upon the ground of his implied approval of his employee's misconduct. And had there been any proof of such approval, any testimony of general instructions, of which this libel was the outgrowth, any evidence as to ratification, the jury might have been warranted in inferring a wrongful motive to fit the wrongful act. But absence of proof of his disapproval, absence of proof that defendant had reproached his employee, or that he had discharged him—in fine, absence of all proof bearing on the essential question, to wit, defendant's motive—cannot be permitted to take the place of evidence without leading to a most dangerous extension of the doctrine, *respondeat superior.*

A plaintiff, whose claim to punitive damages rests upon a wrongful motive of defendant, not inherent in the offence which fixes his legal liability, must present some proof from which such wrongful motive may be legally inferred.

Inasmuch as the plaintiff below failed to do this, the instruction of the court upon this point was misleading.

The judgment of the Circuit Court should be reversed.