## SMITH *v.* SUN PUB. CO.

*(Circuit Court, S. D. New York. March 8, 1892.)*

1. LIBEL—AMBIGUOUS ARTICLE—OPINION EVIDENCE.
   Where a libelous article is ambiguous, a witness may not state as to whom, in his opinion, it refers, but after simply replying in the affirmative to the question, "Did you know to whom it applied?" he may subsequently give the facts and circumstances which show who was pointed to by the publication. *Van Vechten* v. *Hopkins*, 5 Johns. 211, distinguished.

2. SAME—EVIDENCE—ESTOPPEL.
   Where, in an action for libel, evidence offered by the plaintiff has been excluded on the motion of defendant's counsel, on the strength of their statement that they made no attack upon the character or standing of the plaintiff, they are estopped from introducing testimony to show that she had been, or proposed to be, a singer upon the stage.

3. SAME—EXCESSIVE DAMAGES.
   In an action for libel, the amount of damages is almost entirely within the discretion of the jury, and the court will not set aside the verdict as excessive, unless it is satisfied that it is the result of gross error, prejudice, perverseness, or corruption. *Gibson* v. *Cincinnati Enquirer*, 2 Flip. 121, followed.

At Law. Action by Juliette C. Smith against the Sun Publishing Company for libel. Verdict for plaintiff. Defendant moves for a new trial. Denied.

*Harriman & Fessenden,* for plaintiff.

*Franklin Bartlett,* for defendant.

SHIPMAN, District Judge. This is a motion by the defendant for a new trial of an action at law for libel, wherein the jury rendered a verdict for the plaintiff to recover $7,500. The motion is principally based upon exceptions to the admission of evidence and upon the amount of damages, which are alleged to be excessive. The plaintiff is a married woman, and neither her full name nor the full name of her husband was stated in the libel, but circumstances were given from which the person who was intended to be designated could easily be identified. As a part of the testimony in regard to identity, the plaintiff's counsel asked one witness, "Did you know to whom the article related, when you read it? *Answer.* Yes. *Question.* State the reasons why you knew." Each of these questions were objected to and admitted. Another witness was asked, "Did you know to whom it [the article] alluded? *Answer.* I did. *Question.* State how you knew." The first question only was objected to. The decisions in the state of New York are that when a libel is ambiguous, a witness cannot be permitted to testify that from reading the libel he applied it to, or understood it to mean, the plaintiff. These decisions are based upon *Van Vechten* v. *Hopkins*, 5 Johns. 211, which is commented upon and enforced by Chancellor WALWORTH in *Maynard* v. *Beardsley*, 7 Wend. 561. They relate to the bare question, "To whom did the witness apply the article or publication?" and not to questions which call out the circumstances, the facts, and the reasons which would enable the jury to draw their own conclusions. It is true that the decisions are not uniform, but the reason for the exclusion of the question, which merely compels the witness to say that he applied

the libel to the plaintiff, is a sound one, because the admission of such a question and an answer substitutes the opinion or conclusion of the witness for a statement of the facts, from which the jury should make their own finding. As it was said by Chancellor WALWORTH, in 7 Wend. 560: "The witness must state the facts on which the opinion might be founded, and leave it to the court and jury to draw the conclusions." But the exclusion of such a general question does not exclude a statement of the facts and circumstances in detail, from which the jury can see the meaning or intention of the publication and of the facts which caused the witness to know to whom the article applied. The admissibility of such questions is recognized in the *Maynard Case, supra,* and by the text writers. Odg. Sland. & L. 94, note, and 540, where the authorities are also collected. Indeed, Mr. Greenleaf goes further, and says:

"It [the meaning of the defendant] may be proved by the testimony of any person conversant with the parties and circumstances; and, from the nature of the case, they must be permitted to some extent to state their opinions, conclusions, and belief, leaving the grounds of it to be inquired into upon cross-examination." 2 Greenl. Ev. § 417.

The witnesses in this case to whose testimony exception was taken were not asked to whom, in their opinion, or within their knowledge, the article applied. They were asked if they knew to whom the article applied, to which they replied, "Yes," and were then asked to give the reason why they knew; in other words, to state the facts and circumstances which showed who was pointed at by the publication. The testimony was not objectionable under the rule which excludes the opinions or conclusions of a witness. But, if this particular testimony had been inadmissible, that fact would create no ground for a new trial. The testimony that the plaintiff was the person named in the libelous matter was overwhelming. The defendant made no substantial attempt to deny it. As was said in the charge, "the only question in real and actual dispute is the question of damages." The improper admission of a single item of testimony upon the question of identity would have been an unimportant matter upon a motion for a new trial.

The second subject of exception was the refusal of the court to permit the defendant to show that after the plaintiff left school, and before her marriage, some time between five years and nine years before the date of the libel, she studied singing in New York, for the purpose of becoming a singer upon the stage, and it was also said that the defendant proposed to prove that she had sung upon the stage. This evidence was excluded, because in a previous part of the trial evidence offered by the plaintiff had been excluded upon the defendant's motion, upon the strength of the statement of its counsel that he "made no attack upon the character, social standing, or position of the lady." The only object of the offered evidence was to mitigate damages by attempting to diminish her position or standing or character, as the result, in some way, of the circumstance that she had been, or proposed to be, a singer upon the stage. In my opinion, the defendant was estopped from that

line of testimony. The principal point in the case is in respect to the damages, which are said to be excessive, and so large that the existence of prejudice or malice in the jury is clearly shown. The libel charged a married woman, in a sensational and somewhat jeering manner, with having eloped with a man, her previous intimacy with whom, it was further said, had been freely spoken of in the city of her residence. It was a pronounced statement of her disgrace as a married woman, and was displayed in the columns of the paper in a manner intended to attract attention, and to give publicity to the story. It was known and commented upon by a large number of people in the city where she lived, and was calculated to cause great injury to her reputation. No evidence was presented that it caused actual change in her social relations or social *status*. The officers of the defendant company had no personal hostility or spite against the plaintiff, and no damages were asked for on that account. Punitive damages were asked for on the ground that the article was published wantonly or recklessly; that is, without adequate inquiry as to its truth, and with reckless lack of knowledge whether it was true or false. It was said by the defendant that it received the article in the usual course of business, from a news agency upon which it was in the habit of relying for accuracy, which it paid by the week, and not by the quantity, and that it published the article relying upon the source from which it came; and for these reasons, although it did not take other precautions before publication to verify the accuracy of the story, it claimed to be freed from the charge of wantonness or recklessness. The jury were instructed that these were circumstances which were fairly to be taken in mitigation of the act of the defendant, and, if they thought that these facts were sufficient to excuse the defendant from the duty of investigation, of inquiry, of delay for the sake of accuracy, then they should not give punitive damages; but if they thought that the defendant was guilty of reprehensible negligence in the publication of the article, without further attempts to verify its truth, they were justified in giving such a reasonable sum in damages as should be an example to deter against similar future negligence. The jury evidently found that it was a case for punitive damages. In actions for libel the amount of damages is very peculiarly a matter for the jury. It is almost entirely within their discretion, because there can be no fixed or mathematical rule upon the subject. Much depends upon the circumstances of mitigation or aggravation, the notoriety which was given in the newspaper to the defamatory charge, the care or lack of care, the malice or the recklessness which characterized the publication, and the necessity of giving to the public any information in regard to the existence of the charge; so that it is established that courts will not interfere with verdicts in libel suits upon the ground of excessive damages, unless they are satisfied that the verdicts were the result of gross error, prejudice, perverseness, or corruption. *Gibson* v. *Cincinnati Enquirer*, 2 Flip. 121; Townsh. Sland. & L. § 293. "A new trial will only be granted when the verdict is so large as to satisfy the court that it was perversely in excess, or the result of some gross error on a matter

of principle; it must be shown that the jury either misconceived the case, or acted under the influence of undue motives." Odg. Sland. & L. 291.

The claim of the defendant is that the sum is so large that the jury must have been influenced by prejudice, or have been improperly inflamed against the defendant. The jury evidently thought that so much of the mitigation as rested upon the fact that the article was published as received from a news agency in the usual course of business did not tend to mitigate the damages. The amount of punishment which they chose to inflict does not indicate to me that they acted from prejudice against or hostility to the defendant, but that they thought that the general principle or system upon which the testimony showed that its evening paper was conducted was a wrong and perilous system, and that any defendant who, in the course of his business upon that system, and as the result of it, published an article which would naturally cause great injury to a plaintiff, exposed himself to heavy damages.

The motion is denied.