## WUENSCH v. MORNING JOURNAL ASS'N.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. LIBEL—PLEADING—SCANDALOUS MATTER.
   Where an alleged libelous publication charged plaintiff, an elderly man of means, with certain disreputable proceedings, allegations as to matters which defendant desired to prove, showing the truth of some of the statements published, and provable for that purpose, should not be stricken out, even though they are, in their nature, scandalous.

2. SAME—MITIGATION OF DAMAGES.
   In an action for libel, statements in the answer as to specific disreputable acts of plaintiff, for the purpose of reducing the actual or compensatory damages, are demurrable.

3. PLEADING—MOTION TO STRIKE.
   Where a plea was subject to demurrer, and was also scandalous, the remedy is by motion to strike out.

Appeal from special term, New York county.

Action by August Wuensch against the Morning Journal Association. From an order denying a motion to strike out paragraphs of the defendant's second amended answer, as irrelevant, redundant, and scandalous, plaintiff appeals. Modified.

The action was brought to recover damages for an alleged libel. The article alleged to have been libelous was published in the Morgen Journal, a German newspaper conducted by the defendant in New York City. The article was of considerable length, and was set out in the complaint in full, in German, to which was added a translation into the English language. The ideas expressed in the article were, substantially: That plaintiff was in trouble; received ingratitude from his adopted daughter, whose husband wanted to relieve plaintiff of $25,000. That plaintiff was a wealthy pasteboard-box manufacturer, and a model of an old man in love. That he was held in high esteem in the saloons of the East side, because he was a good spender, and his business aforesaid allowed him such luxuries. That he did not speak favorably of the Morgen Journal, because it had published, at various times, adventures in which plaintiff figured in the courts as a suffering or wronged hero. That it would not be a libel to write that the plaintiff still had a young heart. That his pocketbook permitted him to be the benefactor of ladies, and he did not hide his light under a bushel. That he was very often seen in the German theater with young ladies of whom he could be the father; and the most remarkable thing about these frequently different darlings was that, as a rule, they were acquainted with many other gentlemen, but this was the business of the plaintiff, and did not concern any one else. That generally he did not receive much gratitude for the great or little fatherly interest he showed towards the feminine world. Often his efforts of protection entangled him in lawsuits, and this he even had to experience at the hands of his own niece and adopted daughter. That he took her (Dora Ritter) into his house when she was a child four years of age, and allowed her to enjoy all the luxuries which a rich pasteboard-box manufacturer could afford; and when she grew up she married in 1886, against the plaintiff's will, a poor but handsome Portuguese, John Dulany, but the marriage was not a happy one, and Dora returned to plaintiff several times, but was always persuaded by her husband to return to him again. That her husband was not friendly to plaintiff, and went so far as, in his hatred, to threaten plaintiff with a suit for larceny because his wife's watch had disappeared in the plaintiff's house, on which occasion he also charged plaintiff with being more than an uncle to his niece. That at the beginning of the summer a separation again took place between the young couple, and the wife began a suit for a divorce. When the same came to trial, January 19th, the husband succeeded in inducing his wife

to withdraw the suit. During the pendency of these proceedings the plaintiff opened a letter addressed to the wife, and afterwards was brought before the United States grand jury for this offense, but was honorably discharged by that body. That the latest in this lovely, ideal family life was that the plaintiff would be sued for $25,000 damages by the husband for alienating the affections of his wife. That plaintiff was very much irritated over the whole matter, was a good-natured soul, and detested ingratitude more than having the matters spoken of in the newspapers, but he must console himself with the idea that all good people must suffer, and that plaintiff, who had become rich, could not expect to be an exception. The motion was to strike out paragraphs 17 to 26, both inclusive, in defendant's answer, which were substantially as follows: (17) That, for many years prior to the publication, plaintiff frequently drove in the parks of New York City, and appeared in other public places, and in saloons and theaters, with women other than his wife. (18) That during the same time he was a habitual frequenter of wine and beer saloons, and had spent money freely in such saloons, and had a reputation among saloon keepers of being a free spender of money therein. (19) That during the same time he had spent large sums of money in supporting, entertaining, and associating with young women. Between 1875 and 1885 he associated with Louise Kramer, since deceased, and spent large sums of money upon her, supplied her with money, purchased clothes for her, furnished a room for her in a house near his own, and frequently took her to the German and other theaters, and otherwise entertained her. After her death he visited and associated with an actress, Bertha Meyer, spent a large sum of money upon her, purchased wearing apparel and jewelry for her, and otherwise entertained her and supplied her with money. In 1886, and for two years thereafter, he constantly visited and associated with a young woman, Flora Beck, and spent large sums of money upon her, purchased clothes and jewelry for her, supplied her with money, and entertained her in numerous ways. Thereafter, and prior to the publication, he visited and associated with a young woman, Pauline Wendling, and spent large sums of money upon her, and supplied her with money, clothes, and jewelry, and escorted her to the theater, and otherwise entertained her. In or about the year 1889 he visited and associated intimately with a young married woman, Minnie Clarke, known as Weavil; spent large sums of money upon her; supplied her with money for personal expenses; paid the rent and furnished for her a house, 2154 Lexington avenue, and paid for maintaining the house; and supplied her with clothing, jewelry, horses, carriages, a dogcart; escorted her to theaters, balls, restaurants, and entertained her in various ways. (20) The foregoing were some instances in which he associated with, and made companions of, young women; and, if permitted by court, defendant would prove others on the trial. So far, the allegations were a part of the second separate defense, and in justification. (21) The foregoing, with other allegations of the second defense, were here repeated in the third separate defense, and alleged in mitigation of damages, and then there were added: (22) For many years prior to the publication the relations between the plaintiff and women named in foregoing paragraphs were notorious, and a matter of common gossip among the acquaintances and neighbors of the plaintiff; and he had the reputation, among his neighbors and acquaintances, of associating intimately with, and spending large sums of money upon, women other than his wife. (23) All facts pleaded herein as mitigation were known by defendant before publication, and had been communicated to defendant by trustworthy persons, and were believed by defendant to be true. (24) In a fourth separate defense, alleged in reduction of damages, were repeated all the allegations of the foregoing third separate defense, except paragraph 23. Then followed: "(25) Since publication, plaintiff has visited and associated with a young woman, Ethel Moore, and has often appeared with her in public, driven with her in the parks of New York City, escorted her to the theater and entertainments, visited saloons and restaurants with her, and on December 14, 1890, was with her in a house of ill fame in West Forty-Ninth street. (26) And thereby plaintiff's relations with Ethel Moore have, since publication, been matters of common notoriety and gossip among plaintiff's acquaintances and neighbors."

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Julius Lehman, for appellant.

B. F. Einstein and C. J. Shearn, for respondent.

WILLIAMS, J. Paragraphs 17 to 20, both inclusive, are a part of the second defense in the answer, and are alleged in justification of portions of the alleged libelous publication. They are proper allegations for this purpose, as will appear from a mere reading of the publication and the allegations. They allege matters which defendant desires to prove, to show the truth of some of the matters published, and, being proper for such purpose, should not be stricken out, even if they are, in their nature, scandalous.

Paragraphs 21 to 23, both inclusive, repeat these same allegations, and add other allegations by way of mitigation of damages. They are clearly proper for this purpose, and, under section 536 of the Code, could not be proved unless alleged in the answer. They should not be stricken out, even if, in their nature, scandalous. It is not the fault of the defendant that he is obliged to insert allegations in his answer of matters he needs to prove on trial, in the proper defense of the action.

Paragraphs 24–26, both inclusive, constitute the fourth separate defense, and are alleged in reduction of damages. The facts alleged are not competent, and could not be proved upon the trial for the purpose for which they are alleged. The allegations in paragraph 24 are of specific acts, affecting the character of plaintiff, occurring before the alleged libelous publication, and those in paragraphs 25 and 26 are of specific acts occurring after such publication. They are none of them competent to be proved in mitigation of punitive or exemplary damages, or in justification of the publication. They are not alleged as such, but merely in reduction of actual or compensatory damages. The rule in this class of actions is that, if the publication is not justified, the plaintiff is entitled to recover his actual or compensatory damages, in any event. There can be no mitigation of this kind of damages. Mitigation extends or relates only to punitive or exemplary damages. A party, if entitled to such actual or compensatory damages, must be awarded such damages as the jury may find naturally and necessarily flow from the publication, for injury to the plaintiff's reputation and character. In the absence of proof as to what the plaintiff's character was before the publication, the jury must assume that the plaintiff was possessed of a fair character. The defendant would have the right to attack his character, and show it was not such as the law would otherwise presume it to be, but he could only do so in two ways: First. By cross-examination of the plaintiff himself, if he should be used as a witness; and such cross-examination might extend to any specific acts occurring before or after the publication, down to the trial, as bearing upon his credibility as a witness, as well as upon his character, for injury to which damages are sought to be recovered. Second. By calling witnesses as to the general reputation of the

plaintiff at and prior to the time of the alleged publications. Witnesses could not be called, however, to prove specific acts on the part of the plaintiff, occurring before or after the publication, either by way of attacking his credibility as a witness, or his character, for damages to which a recovery is sought. It follows, therefore, that the facts alleged in this fourth separate defense are improper, and should have been stricken from the answer. Very likely, this separate defense was subject to demurrer; and, if there was no question made as to the matter being scandalous, the motion to strike out might properly have been denied on the ground that demurrer was the only proper remedy to relieve the answer from the allegations. But, being of the character known as "libelous," we think the court should have applied this remedy by motion to strike out, in order to remove the matter from the record.

The order appealed from should be modified so as to provide for the striking out of the paragraphs 24–26, both inclusive, and as modified affirmed, without costs. All concur.