## DE SEVERINUS v. PRESS PUB. CO.

(Supreme Court, Appellate Division, Second Department.   November 24, 1911.)

1. LIBEL AND SLANDER (§ 74*)—ACTS OF SERVANT—LIABILITY OF MASTER.
>       A newspaper is liable for publishing a libelous article of and concerning plaintiff written by one of its court reporters without any foundation in fact.
>       [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 175–178;  Dec. Dig. § 74.*]

2. LIBEL AND SLANDER (§ 66*)—RETRACTION.
>       Retraction of a libel published by a newspaper is relevant only to show absence of actual malice and does not exonerate it from the consequences of its original recklessness.
>       [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 168;  Dec. Dig. § 66.*]

3. LIBEL AND SLANDER (§ 121*)—EXCESSIVENESS—LIBEL.
>       Plaintiff sued her husband for a divorce.   Defendant's court reporter wrote an article about the case in which he falsely described a lawyer as appearing for the co-respondent and asking that the decree granted to plaintiff be set aside because of newly discovered evidence that plaintiff had been guilty of improper conduct at certain places.   No such statement was made by any lawyer in court at the time, nor was any such question raised in the action.   Plaintiff was a reputable woman conducting an art school which was attended by a good number of small children.   *Held*, that a verdict allowing plaintiff $5,000 was not excessive, and that the court erred in granting a new trial unless plaintiff would consent to reduce the verdict to $1,500.
>       [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 353, 354;  Dec. Dig. § 121.*]

Appeal from Special Term, Kings County.

Action by Lillian G. De Severinus against the Press Publishing Company.   From an order setting aside a verdict in plaintiff's favor and granting a new trial, she appeals.   Reversed, and verdict reinstated.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Theodosius F. Stevens, for appellant.

Howard Taylor (Charles B. Brophy, on the brief), for respondent.

CARR, J.   The plaintiff brought an action against the defendant, which publishes the "New York World," for a libelous article printed concerning her.   The defendant did not attempt to justify the publication, but contented itself by putting in evidence showing the absence of actual malice, and that the article in so far as it was libelous was caused by mistake of one of its reporters.   This reporter was shown to have been a man of 60 years of age, and engaged specially to report court proceedings and to have been generally reliable theretofore.   The court charged the jury that the plaintiff was entitled to a verdict at its hands, leaving to them to fix the amount of damages, and submitting to them the question whether, in addition to compensatory damages, punitive damages should be awarded.   The case was one in which the jury could have well awarded punitive damages, as no doubt it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

did, considering the amount of its verdict. The article published concerning the plaintiff purported to be an account of a proceeding in court in which she was the plaintiff and in which her former husband was the defendant. This action was one brought by her for a divorce from her husband, and the proceeding described in the newspaper arose upon her application at Special Term for a final decree in her favor upon the findings of a jury after a trial upon framed issues. The article in question describes a lawyer as appearing for the co-respondent in the action and asking:

"That the decree granted to Mrs. De Severinus be set aside on the ground of newly discovered evidence. He said he would show that Mrs. De Severinus had been guilty of improper conduct at Sea Cliff, Glen Cove, L. I., and at other places."

No statement of this character was made by any lawyer in court at the time, nor was any such question ever raised in the divorce action. Either the reporter was not present and cooked up his article from second-hand material, or, if present, was careless and reckless in his attempt to describe what had happened. In the article in question, the names of the respective counsel are stated, together with their office addresses. Apparently the reporter took care to get these minor and insignificant matters correctly stated, but was careless and reckless in his attempt to state the important and fundamental matters in the controversy.

No doubt the defendant made its publication without intent to harm the plaintiff by a false charge. This charge, however, was of a most serious character. To impute to a married woman the repeated commission of adulteries is a most shocking matter when, as in this case, there was no basis whatever for it.

[1] For the misconduct of the reporter, it is just as liable as is any employer for the act of an employé within the scope of his authority. The plaintiff went to the office of the defendant and protested against the libel which it had published concerning her.

[2] A retraction was published by the defendant. This goes only to show absence of actual malice, but it does not exonerate it from the consequences of original recklessness.

[3] The jury found a verdict for the plaintiff in the sum of $5,000. The trial court set aside this verdict and granted a new trial unless the plaintiff would consent to reduce the verdict to the sum of $1,500. The power of the trial court over verdicts awarding damages, liquidated or unliquidated, is too well settled to require any present discussion. Its power, however, rests upon the exercise of a sound discretion, and is subject to review in this court. According to the proofs in this case, the plaintiff was a reputable woman, conducting an art school which was attended by a good number of small children. A publication reflecting upon her moral character would be both very injurious and very distressing when a newspaper of great circulation became the vehicle of the charge. Five thousand dollars is a large sum of money; but, in the viewpoint of a community such as ours, it is not too large for an unfounded imputation upon the honor of a respectable woman who is seeking the good will of the community to

earn her bread. Actions for libel are quasi penal in their nature. They involve not only satisfaction of actual damages but punishment for the offense. Smart money is allowed, under appropriate circumstances, because of the deterrent effect of such allowance upon future conduct. The jury cannot fix an amount of damages with any nicety. Sometimes the trial court is in a position not much better. The amount of this verdict was not so great as to shock the conscience or to suggest passion or prejudice, and it should not have been disturbed.

The order setting aside the verdict and granting a new trial should be reversed, and the verdict reinstated, with costs. All concur.