**REYNOLDS v. PEGLER et al.**

United States District Court
S. D. New York.
July 22, 1954.

Phillips, Nizer, Benjamin & Krim, New York City, for plaintiff; Louis Nizer, New York City, of counsel.

.2. See "Transfers Under New Judicial Code," 10 F.R.D. 595, 606.

McCauley & Henry, New York City, for defendants; Charles Henry, New York City, of counsel.

WEINFELD, District Judge.

The jury in this libel action returned a verdict for compensatory damages against all three defendants in the sum of $1 and for punitive damages against the defendant Pegler in the sum of $100,000, against the defendant The Hearst Corporation in the sum of $50,000, and against the defendant Hearst Consolidated Publications, Inc. in the sum of $25,000.

The defendants move under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. to set aside the verdict for punitive damages principally upon the ground of excessiveness, contending in substance that the verdict of $1 for compensatory damages reflects but nominal financial injury to the plaintiff and consequently the awards of punitive damages are excessive. Apart from the issue of excessiveness, the defendants also contend that a verdict of nominal compensatory damages precludes an award of punitive damages in any substantial amount no matter how malicious defendants' attack may have been or even if the evidence warranted the jury in finding, as defendants' counsel states it, " * * * the presence of actual malice on the part of the defendants in a very high degree * * * ."

▉▉ We first consider the defendants' basic challenge to the judgment that the absence of any substantial financial injury to the plaintiff necessarily limits the amount which may be awarded for punitive damages. In effect, the defendants urge that the giving of punitive damages is dependent upon, and must bear relationship to, the allowance of actual damages. But the applicable law is to the contrary and is too firmly rooted to admit of argument. It has long been the law of New York, which governs this action,[1] that the jury may award substantial exemplary damages even though no actual financial injury has been suffered.[2] Federal law in the pre-Erie v. Tompkins era has been in accord.[3] Even were the matter open for consideration I see no reason to differ from established law.

The rationale of the New York law has been stated by Judge Gaynor, a recognized authority in the field of libel law, in Prince v. Brooklyn Daily Eagle, 16 Misc. 186, 37 N.Y.S. 250:

"It is contended that, as the jury found that the plaintiff was damaged only nominally, it was not a case for punitive damages. It is said that it would not have been error to have charged the jury that, if they found that the plaintiff was damaged only nominally, they should not give punitive damages. There is authority for this (Stacy v. [Portland] Publishing Co., 68 Me. 279); but I do not think it is the law of this state. A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value

1. Jurisdiction is based upon diversity of citizenship.

2. Fry v. Bennett, 9 Abb.Prac.Rep.,N.Y., 45; Prince v. Brooklyn Daily Eagle, 16 Misc. 186, 37 N.Y.S. 250; Clark v. Variety, Inc., 189 App.Div. 462, 178 N.Y.S. 698; Hess v. News Syndicate, 267 App.Div. 886, 47 N.Y.S.2d 584, reversing Id., 180 Misc. 298, 42 N.Y.S.2d 297; Udell v. Josephson, Sup., 11 N.Y.S. 2d 866.

3. Press Pub. Co. v. Monroe, 2 Cir., 73 F.

196, 201, 51 A.L.R. 353; Wardman-Justice Motors v. Petrie, 59 App.D.C. 262, 39 F.2d 512, 69 A.L.R. 648; Scalise v. National Utility, 5 Cir., 120 F.2d 938, 941: "* * * [I]n the federal courts, the giving of punitive damages is not dependent upon, nor must it bear any relation to, the allowance of actual damages. It is sufficient that there has been a deliberately wrongful act for which the plaintiff has a right of action and that the circumstances are such as to authorize the exaction of smart money."

and necessity." Id. 37 N.Y.S. at page 253.

To adopt the contrary view now urged by the defendants would mean that a defamer gains a measure of immunity no matter how venomous or malicious his attack simply because of the excellent reputation of the defamed; it would mean that the defamer, motivated by actual malice, becomes the beneficiary of that unassailable reputation and so escapes punishment. It would require punitive damages to be determined in inverse ratio to the reputation of the one defamed.[4] The doctrine advanced by the defendants would nullify one of the underlying objectives of punitive damages and has consistently been rejected by New York and federal authorities, although recognized in a few states.[5]

Since under applicable law punitive damages properly may be awarded where the actual damage suffered is only nominal we next consider the defendants' contention that the amounts awarded against the respective defendants are excessive.

Punitive or exemplary damages are intended to act as a deterrent upon the libelor so that he will not repeat the offense, and to serve as a warning to others.[6] They are intended as punishment for gross misbehavior for the good of the public and have been referred to as "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine." [7] Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit.[8] The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another.

The distinction between compensatory and punitive damages determines the legal standards by which the propriety of the amount of the award must be judged. Compensatory damages are what the term implies—an amount, though difficult to ascertain precisely, which indemnifies the plaintiff for the injury and damage suffered by him.[9] But an award for punitive damages, by its very nature and purpose, permits of no such external or arithmetical yardstick. Once the jury has determined the existence of actual malice—or its legal equivalent, reckless or wanton indifference to the rights of others— [10] the jury is empowered, but not required, to penalize the defendants.[11] Given a basis on which to award punitive damages, a jury

---

4. Cf. Press Pub. Co. v. Monroe, 2 Cir., 73 F. 196, 201: " * * * [E]xemplary damages are awarded in the federal courts, namely, as something additional to, and in no wise dependent upon, the actual pecuniary loss of the plaintiff * * *. [T]here is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury, but is unable to prove that he is poorer in pocket by the wrongdoing of defendant."

5. See footnotes 2 and 3 supra.

6. Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 126 N.E. 260, 10 A.L.R. 662; Holmes v. Jones, 147 N.Y. 59, 41 N.E. 409.

7. Haines v. Schultz, 50 N.J.L. 481, 14 A. 488, 489, cited in Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 65–66, 126 N.E.

260, 10 A.L.R. 662; cf. Commissioner of Internal Revenue v. Glenshaw Glass Co., 3 Cir., 211 F.2d 928, 933.

8. New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204, 220.

9. See, e. g., Sanderson v. Caldwell, 45 N.Y. 398, 406; Mattox v. News Snydicate, 2 Cir., 176 F.2d 897, 12 A.L.R.2d 988; Osterheld v. Star Co., 146 App.Div. 388, 131 N.Y.S. 247; Wuensch v. Morning Journal Ass'n, 4 App.Div. 110, 38 N.Y.S. 605; Kehoe v. New York Tribune, Inc., 229 App.Div. 220, 241 N.Y.S. 676; Young v. Fox, 26 App.Div. 261, 49 N.Y.S. 634.

10. Smith v. Matthews, 152 N.Y. 152, 46 N.E. 164; Holmes v. Jones, 121 N.Y. 461, 24 N.E. 701, Id., 147 N.Y. 59, 41 N.E. 409; Crane v. Bennett, 177 N.Y. 106, 69 N.E. 274.

11. Crane v. Bennett, 177 N.Y. 106, 115, 69 N.E. 274; Holmes v. Jones, 147 N.Y. 59, 67, 41 N.E. 409.

is necessarily vested with a broad discretion. In imposing the penalty of punitive damages the jury may be said to function in a quasi-judicial capacity and just what sum will vindicate the public interest and act as a deterrent upon him who has offended rests peculiarly within the discretion of the jury as the dispenser of justice.[12] There are, of course, limits upon the jury's power; but unless the amount of the penalty is so clearly excessive as to compel the conclusion that it is the result of passion or prejudice, its award should not be disturbed. The fact that a Court may disagree with the jury's award, or had a Court been sitting as the trier of the fact, it would have awarded a lesser sum, is not the test on a motion to set aside or reduce a verdict on the ground of excessiveness. The Court may not substitute its judgment for that of a jury. In general, the authorities are in accord that it is only when the amount awarded shocks the "judicial conscience" that the Court is warranted in interfering with the award.[13] This is but another way of saying that before acting the Court must be satisfied that the result is not based upon a rational consideration of the evidence and the proper application of the law.

The jury had been charged in this case: "A substantial compensatory damage must be founded upon a finding of substantial injury. If you find that there has been no substantial injury, then the damages may be nominal. * * *" And after explaining the purpose of punitive damages, they were further instructed: "Punitive damages must be considered separately by you as to each of the defendants. You must determine the question of spite or ill-will or reckless indifference as to each. * * * If

you decide to award punitive damages or smart money, the sum you award need have no relationship to any amount you award for compensatory damages. It may be greater or less. That is a matter which rests in your sole discretion. * * * "[14] No exception was taken by the defendants to these instructions.

The libel case of Seested v. Post Printing & Publishing Company, 1930, 326 Mo. 559, 31 S.W.2d 1045, appears to be particularly apposite. The jury there returned a verdict of $100,000 compensatory damages, and $100,000 punitive damages, the full amounts requested in the complaint. The judgment was against a single local paper with a circulation of 150,000. Upon appeal the highest court of the State of Missouri reduced the award of compensatory damages to $25,000 but upheld the award of punitive damages in the sum of $100,000. In considering defendant's attack upon the verdict as excessive, it stated:

"The duty which the jury was called upon to discharge in the award of punitive damages was to assess such a penalty as would be adequate to punish appellant and deter others of like minds and possessed of the same means of inflicting injury from perpetrating similar wrongs. Does an assessment of a penalty of $100,000, all the facts and circumstances considered, manifest an abuse of discretion. Courts are not endowed with any unusual or peculiar discernment in such matters. The test usually applied by them is whether the assessment is so excessive as to shock the 'judicial conscience.' The judicial conscience is presumed to be representative of the consciences of all judicially minded right-thinking men and women. Applying as

12. Cf. 25 C.J.S., Damages, §§ 117, 126.

13. Coleman v. Southwick, 9 Johns. 44, 51; Fry v. Bennett, 9 Abb.Prac.Rep. 45; DeSeverinus v. Press Pub. Co., 147 App. Div. 161, 132 N.Y.S. 80; Smith v. Sun Pub. Co., C.C.S.D.N.Y., 50 F. 399, 401, affirmed 2 Cir., 55 F. 240; Seested v.

Post Printing & Publishing Company, 326 Mo. 559, 31 S.W.2d 1045, 1054.

14. See Clark v. Variety, Inc., 189 App. Div. 462, 178 N.Y.S. 698; charge in Kaminsky v. American Newspapers, Inc., 283 N.Y. 748, 28 N.E.2d 971; cf. Scalise v. National Utility, 5 Cir., 120 F.2d 938, 941.

best we may the test just referred to, we are unable to say that there was any abuse of the discretion lodged with the jury, so far as the assessment of punitive damages is concerned." Id. 31 S.W.2d at page 1054.

In the instant case it is not seriously disputed that there was abundant evidence upon which the jury could find actual malice on the part of the individual defendant and reckless and wanton indifference on the part of the corporate defendants. Indeed, counsel for the defendants upon the argument of the present motion freely conceded as much.

The article upon its face was clearly defamatory—and extensively so. In a newspaper column of twenty-six paragraphs, every paragraph, with but few exceptions, contains defamatory strictures upon the plaintiff, concerning both his professional and personal life. The plaintiff had a national and international reputation as a war correspondent, author and lecturer. His writings were published regularly over a period of seventeen years in a leading national magazine. He appeared on radio and television programs under the sponsorship of well-known national concerns. His books enjoyed a wide distribution. His reputation for personal integrity and general standing was attested to by prominent public figures.

A sampling of but a few of the maledictions cast upon the plaintiff conveys some idea of the general vituperative nature of the article. The article said of plaintiff that he was " * * * largely an absentee war correspondent"; that " * * * the fact was not to be established until we got the war which he had been howling for, that his protuberant belly was filled with something else than guts"; that, although an " 'interventionist' " and loathing " 'isolationists' " and " * * * though he was a giant and a bachelor, he let several million kids about 18 years old do the fighting"; that " * * * by forceful, opportune promotion, [he] became one

of the great individual profiteers of the war"; that one whom he had opposed for public office had " * * * peeled him of his mangy hide and nailed it to the barn door with the yellow streak glaring for the world to see"; that he "* * * and his girl friend of the moment were nuding along the public road."

The jury in awarding punitive damages necessarily found that the defamatory charges were inspired by malevolence and ill-will, which on the evidence was underscored by a number of incidents subsequent to the original publication.

First, the amended answer of all the defendants, filed some four months after plaintiff had commenced this action and after he had denounced the article as false, not only repeated but expanded upon the charges. Thus, instead of a retraction, there was a reiteration and broadening of the original charges.

Second, about fifteen months after the original publication and during the pendency of the action, the individual defendant, learning that plaintiff had been engaged to address a credit group, made pointed inquiry as to the amount plaintiff was to receive and also sought other information in connection with this appearance. He then wrote a column which was published and distributed by the other defendants, purporting to set forth the "facts" about plaintiff's activities. The jury could reasonably draw the conclusion that the article was inspired by malice and ill-will toward the plaintiff and was deliberately written for the purpose of dissuading prospective employers from engaging the services of the plaintiff.

On another occasion, subsequent to the original publication, the individual defendant called a well-known radio commentator with reference to work plaintiff was about to do on a motion picture concerning a famous air force general. The individual defendant stated that his purpose was "to inform a friend of some facts" so that his friend, the radio commentator, could "use his own judgment" with respect to hiring plaintiff.

Finally, more than four years after publication of the original article and on the very eve of trial, after the plaintiff had been invited to appear as a guest speaker at a public function to honor one of the nation's great public servants, the individual defendant communicated with another scheduled guest speaker, a former Cabinet Officer, "to place information at [his] command." He also attempted to communicate with the guest of honor for the same purpose. Then following that dinner, he called a sports writer of a local New York paper of wide circulation to have him exercise his "judgment" with respect to plaintiff and his appearance at the public function. The defendant was neither an officer or member of, nor in any way affiliated with, the organization sponsoring the function.

■ The jury was warranted in concluding from the foregoing incidents that the persistent and continuing attitude of the defendant reflected malice in a very high degree and extreme hostility in the original publication, and a calculated design to injure the plaintiff in his profession and in his standing in the community.[15]

■ Considering the vituperative nature of the original charges, the repetition and the broadening of the charges, as to some of which defendants made no attempt to offer any proof, the continued and unabated attacks upon the plaintiff, the influence of the individual defendant whose daily column was widely circulated, the influence of the corporate defendants, one a syndicate distributor of the article to other newspapers and magazines throughout the nation and the other a publisher of a newspaper in the Greater New York Metropolitan Area, and the responsibility which accompanies such extensive influence,[16] it cannot be

said that the varying amounts awarded against the respective defendants as punitive damages are so excessive as to shock the judicial conscience and require that they be set aside.

Indeed, the individual assessment of punitive damages against each defendant reflects the exercise of a carefully considered judgment by the jury. It fined the individual defendant, the author of the article, the largest sum—$100,000; assessed against the Hearst Corporation, the distributor of the article to the 186 newspapers with their combined and nationwide circulation of 12,000,000, the sum of $50,000; and, finally, assessed against the Hearst Consolidated Publications, Inc., which had published the article in its newspaper having a circulation of 743,000, the sum of $25,000.

The evidence in the case warranted a finding by the jury that the nature and extent of malicious conduct of each defendant differed—that in the case of the individual defendant there was actual malice, ill-will and spite, and in the instance of the corporate defendants wanton or reckless indifference of plaintiff's rights. In discriminating in the awards imposed against each defendant, the jury followed the Court's instructions that the issue of punitive damages had to be considered separately as to each. The verdict of the jury not only finds support in the evidence, but is consonant with the objectives of punitive damages. If the purpose of punitive damages is to punish and to act as a deterrent, a verdict which is not in such sum as to make itself felt upon an offender defeats that purpose. Unless it is of sufficient substance to "smart," the offender in effect purchases a right to libel another for a price which may have little or no effect upon him. Indeed, in such a situation a defendant, instead of being deterred

---

15. Cf. Crane v. Bennett, 177 N.Y. 106, 69 N.E. 274; Fry v. Bennett, 28 N.Y. 324; Turton v. New York Recorder Co., 144 N.Y. 144, 150, 38 N.E. 1009.

16. See Seested v. Post Printing & Publishing Company, 326 Mo. 559, 31 S.W.

2d 1045, 1054; cf. Smith v. Sun Pub. Co., C.C.S.D.N.Y., 50 F. 399, 401, affirmed 2 Cir., 55 F. 242; Morning Journal Ass'n v. Rutherford, 2 Cir., 51 F. 513, 515–516.

**42**

from a repetition of his offense, may be encouraged to renew his assault.

Based upon all the evidence, I cannot say that the amount awarded for punitive damages warrants judicial interference.

The motion is denied.

Settle order on notice.