Sidney **ROGINSKY**, Plaintiff,

v.

**RICHARDSON–MERRELL, INC.,**
Defendant.

No. 64–Civ. 33.

United States District Court
S. D. New York.

April 18, 1966.

Speiser, Shumate, Geoghan & Krause, New York City, William F. Geoghan, Jr., New York City, of counsel, for plaintiff.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Judge Lawrence E. Walsh, New York City, of counsel, Costello, Ward, Tirabasso & Shea, New York City, Joseph M. Costello, New York City, of counsel, for defendant.

CROAKE, District Judge.

The present action is one of over seventy cases assigned to the undersigned involving injuries alleged to have resulted from ingestion of the prescription drug MER/29, which was developed, tested and marketed by the Wm. S. Merrell Company, a division and formerly a subsidiary of the defendant. After a four week trial in the instant case, the first to be tried in this court, the jury responded as follows to the following interrogatories:

*"Question No. 1:* Was the ingestion of the Drug MER/29 by the plaintiff the proximate cause of the injuries of which he complains?      Yes

"You will answer that question either yes or no. If your response is no, then you are not required to consider any of the following questions. If your answer to Question No. 1 is yes, then you will consider the following.

*"Question No. 2:* Did any negligence on the part of the defendant, as the term negligence has been explained to you in this charge, serve as the proximate cause of the injuries of the plaintiff?      Yes

"You will answer that question either yes or no, and proceed to Question No. 3.

*"Question No. 3:* Has the plaintiff established the elements of his claim that he was injured as a result of the obtainment by the defendant of the right to market MER/29 by fraud committed upon the Food & Drug Administration in the matter of submission of data?      Yes

"You will answer that question either yes or no. If your responses to both Question Number 2 and Number 3 have been no, then you need not consider the remaining inquiries. If your response to either has been yes, then you will answer Question No. 4.

*"Question No. 4:* What is the amount of compensatory damages, as that term has been explained to you in this charge, to which you find the plaintiff to be entitled? You will answer by writing the amount.      $17,500

"Now, if your response to Question No. 2 has been yes, you will consider Questions 5 and 6. If your response to Question No. 2 was negative, then you will proceed no further.

"*Question No. 5:* Do you find that the defendant should respond to the plaintiff in exemplary damages, as that term has been characterized for you in this charge? <u>Yes</u>

"You will answer this yes or no. If your response is no, then you need not consider Question No. 6. If your response is yes, then you will answer Question No. 6.

"*Question No. 6*: To what amount of exemplary damages do you find the plaintiff to be entitled? $100,000

"You will answer by writing in the amount."

Before the court for disposition herein are the post-trial motions of the defendant. Since the conclusion of the trial, the court has had the opportunity for a reexamination [1] of a transcript of the proceedings. So also, the various arguments raised in the post-trial briefs have been perused. Upon consideration the requests that a verdict be directed for the defendant as to all claims, or a new trial granted, are denied. In the alternative, defendant seeks to establish that the verdict for punitive damages was excessive, apparently urging the requirement of a necessary relationship between that and the compensatory damage award, and requesting that:

"If our motions shall be denied, we should like leave to prepare and submit a compilation based on prior determinations showing accepted relationships between compensatory and punitive damages to serve as a guide for the Court."

The charge of the court directly pertinent to the amount of punitive damages was as follows: [2]

"Now, assuming you find that exemplary damages should be awarded, you would then reach the question of what their amount should properly be. There is no precise formula by which this question might be answered. In your deliberations you should bear in mind the conditions under which, and the purposes for which, the law permits an award of exemplary damages to be made. You may consider the potentially wide effect of the actions of the corporation and, on the other hand, you may consider the potential number of actions similar to this one to which that wide effect may render the defendant subject. Finally, you should also consider the requirement of the law that the amount of such punitive damages, when awarded, must be fixed with calm discretion and sound reason, and must never be either awarded or fixed in amount because of any sympathy or bias or prejudice with respect to any party to this case." (Minutes—p. 3045.)

In Reynolds v. Pegler, 123 F.Supp. 36 (S.D.N.Y.1954), aff'd 223 F.2d 429 (2d Cir. 1955) cert. denied, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955), Judge Weinfeld denied a post trial motion to set aside a verdict for punitive damages as excessive and spoke as follows upon the standard of review:

"The distinction between compensatory and punitive damages determines the legal standards by which the propriety of the amount of the award must be judged. Compensatory damages are what the term implies—an amount, though difficult to ascertain precisely, which indemnifies the plaintiff for the injury and damage suffered by him. But an award for punitive damages, by its very nature and purpose, permits of no such external or arithmetical yardstick. Once a jury has determined the existence of actual malice— or its legal equivalent, reckless or wanton indifference to the rights of others —the jury is empowered, but not required, to penalize the defendants. Given a basis on which to award punitive damages, a jury is necessarily vested with a broad discretion. In imposing the penalty of punitive damages

---

1. Daily copy was provided.

2. It might be noted that the defendant did not after the charge, make any objections or requests.

the jury may be said to function in a quasi-judicial capacity and just what sum will vindicate the public interest and act as a deterrent upon him who has offended rests peculiarly within the discretion of the jury as the dispenser of justice. There are, of course, limits upon the jury's power; but unless the amount of the penalty is so clearly excessive as to compel the conclusion that it is the result of passion or prejudice, its award should not be disturbed. The fact that a Court may disagree with the jury's award, or had a Court been sitting as the trier of the fact, it would have awarded a lesser sum, is not the test on a motion to set aside or reduce a verdict on the ground of excessiveness. The Court may not substitute its judgment for that of a jury. In general, the authorities are in accord that it is only when the amount awarded shocks the 'judicial conscience' that the Court is warranted in interfering with the award. This is but another way of saying that before acting the Court must be satisfied that the result is not based upon a rational consideration of the evidence and the proper application of the law." 123 F.Supp. at 38–39.

Upon most careful consideration, it cannot be said that judicial interference with the amount of the award of punitive damages is warranted and, accordingly, the motion seeking such relief and the request for leave to submit the specified compilation are denied. The latter rests upon the assumption that the ratio between the amount of compensatory and the award of exemplary damages is the determinative factor. However, it does not appear that the New York law [3] requires any necessary relationship between the two.[4]

Counsel shall submit a judgment upon notice.

3. It was stipulated by the parties that New York law was to be applied.

4. As was stated by the Appellate Division, First Department in Faulk v. Aware, Inc., 19 A.D.2d 464, 244 N.Y.S.2d 259 (1963), aff'd 14 N.Y.2d 899, 252 N.Y.S. 2d 95, 200 N.E.2d 778 (1964) cert. denied, 380 U.S. 916, 85 S.Ct. 900, 13 L.Ed.2d 801 (1965), reversing a judgment for the plaintiff in a libel action unless he consented to a reduction of compensatory damages to $400,000 and punitive damages to a total of $150,000:

"While there 'is no rigid formula by which the amount of punitive damages is fixed' * * * there are limits beyond which a jury should not be permitted to go. It is the duty of the court to keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the *mala fides* of the defendant in the particular case." 244 N.Y.S.2d at 266.

See Kern v. News Syndicate Co., 20 A.D. 2d 528, 244 N.Y.S.2d 665 (1st Dept. 1963), where the court reversed a judgment for the plaintiff in a libel action and ordered a new trial unless the plaintiff consented to a reduction of punitive damages to the sum of $50,000. Compensatory damages in the amount of $1,000 and punitive damages in the sum of $200,000 had been awarded. (See N.Y. L.J. Feb. 11, 1963, under Trial Term Part 12, N.Y.Co.Sup.Ct.). The court held that "Upon this record we believe that the jury could not properly award to plaintiff more than $50,000 as punitive damages." Finally, see 14 N.Y.Jur. Damages, § 188 at p. 49 (and also the case cited at n. 18), wherein it is stated that:

"Awards of exemplary damages cannot be governed or measured by any precise rule, and although it has been said that they should bear some relation to the injury inflicted and the cause thereof, there is no rule which requires that they bear a definite relationship to the actual damages, or any precise way of determining the assessment of punitive damages or estimating them with arithmetical accuracy. However, the court does have power to interfere with the jury's verdict if the award is based upon prejudice or partiality, or if the amount awarded is so unreasonable as to 'shock the judicial conscience.' "

In the light of the foregoing and of the independent examination of the authorities made by the court, which research indicates severe doubt as to the validity of the position which the defendant would urge, it would seem more appropriate that the burden of seeking rehearing at the trial level be placed upon the defendant, if it is so advised, rather than that the burden of delay in entry of the instant decision be put upon the plaintiff.