WINIFRED V. LYNCH, Respondent, *v.* ALEXANDER H. FIGGE, Appellant.

Second Department, December 17, 1920.

Husband and wife — action for breach of promise to marry — necessity for reply to defense of general release — right to raise issue of fraud in procuring release — evidence — res gestæ — admissibility of conversation prior to execution of release on question of fraud — admissibility on question of actual damages of evidence as to unchastity of plaintiff where plaintiff had introduced evidence of chastity — admissibility of evidence by plaintiff as to abortions submitted to at defendant's request.

In an action for breach of promise to marry, allegations in the answer as to a general release executed by the plaintiff did not require a reply and were deemed controverted by the plaintiff by traverse or avoidance.

Although this is an action at law and the relief sought by the plaintiff from the effect of the release was based upon purely equitable grounds, the issue might be tendered and determined herein.

The plaintiff having contended that the release pleaded by the defendant had been procured by fraud and deceit the defendant was entitled to prove, as a part of the *res gestæ*, a conversation in relation to a settlement which took place between the plaintiff and the defendant and others before the release was executed.

The defendant was not obliged to plead the facts inducing the settlement to render such facts admissible in answer to the plaintiff's testimony that she had been deceived and defrauded.

In an action for breach of promise to marry, where it appeared that plaintiff and defendant had lived together for several years in meretricious relationship and after the breaking off of such relations plaintiff commenced the action, plaintiff having voluntarily introduced evidence of her chastity prior to the relationship and her faithfulness to defendant, although such facts were not alleged in the complaint, the defendant should have been permitted to show, on the question of actual damages, that plaintiff was not chaste when she first met defendant and that she was not faithful to defendant during the continuance of their relations.

In the absence of appropriate allegations in the complaint it was error to permit the plaintiff to show, over defendant's objections, that during the period of the relationship between the parties plaintiff consented to several abortions at defendant's request.

It was error to permit plaintiff to testify that she requested defendant not to insist upon one of the abortions so that she might bear a child, but that he refused; the introduction of such evidence introduced a highly speculative element of damage.

APPEAL by the defendant, Alexander H. Figge, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 28th day of January, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Robert H. Elder* [*Otho S. Bowling* and *Frank W. Harris* with him on the brief], for the appellant.

*Louis Boehm,* for the respondent.

KELLY, J.:

The plaintiff sues for damages for breach of promise of marriage. The action was commenced on January 20, 1919, and the complaint charges that at various times between May, 1909, and October, 1917, the plaintiff at the request of defendant promised to marry him and defendant promised to marry plaintiff at a time thereafter to be agreed upon and within a reasonable time; that by means of such promises so secured from plaintiff the defendant seduced and debauched plaintiff, that he has refused to marry her, and has married another woman. The defendant's answer was a general denial and as a separate defense he alleged that on October 30, 1917, subsequent to the dates mentioned in the complaint, the plaintiff accepted $500 in full satisfaction of any and all claims which she might have against defendant and executed and delivered to him a general release, a copy of which, apparently duly executed under seal and acknowledged before a commissioner of deeds, is attached to the answer. The plaintiff served no reply and the issues came on for trial. The jury returned a verdict for $25,000 damages, and defendant appeals. The only points presented by appellant relate to alleged errors in the admission and exclusion of evidence to which exception was duly taken.

I. The appellant insists that the learned trial judge erred in excluding evidence of his negotiations with the plaintiff and conversations had with her immediately preceding the execution of the general release pleaded in the answer as a separate defense.

No reply having been required or served, the allegations in the answer as to the general release were deemed controverted by the plaintiff by traverse or avoidance (Code Civ. Proc. § 522), and although this was an action at law, and the relief sought by the plaintiff from the effect of the release was based upon purely equitable grounds, the issue might be tendered and determined in this action. (*Warner* v. *Star Co.*, 162 App. Div. 458.) Upon the trial, on her direct examination, the plaintiff admitted that she executed the general release at the office of the defendant's attorney and that she received the defendant's check which she cashed on the following day, but she stated that she had not agreed to settle her claim against defendant and did not know she was signing a general release of all claims which she might have against him; that she was in a very nervous condition and that defendant told her the paper was a receipt for money with which to pay rent and other bills which she owed; that she did not know she was releasing all her rights against the defendant and that she did not know how much money she was to receive. On the other hand, defendant contended that she fully understood what she was doing and that the plaintiff and a woman friend went with him to the lawyer's office directly from a meeting in a restaurant at which the settlement was arranged, for the purpose of signing the paper. The defendant, the lawyer and plaintiff's woman companion testified that the terms of the settlement were stated to the lawyer in plaintiff's presence, that when the release was prepared it was first read aloud by the lawyer, that plaintiff read it before she signed it and understood it. The learned trial justice charged the jury that if plaintiff accepted the sum of $500 in settlement of her claims against defendant and knowingly executed the release the defendant was entitled to a verdict.

The defendant testified that immediately before the release was signed he met the plaintiff at a restaurant in Brooklyn. There were present the plaintiff, a woman friend of the plaintiff, a man with whom it is claimed plaintiff had become intimate without defendant's knowledge, and another man, a friend or relative of plaintiff's new acquaintance. The woman friend was allowed to testify that at this conference the defendant offered to give plaintiff $500 in settlement, and that

plaintiff at first refused to accept that sum but subsequently said she supposed she might as well settle for that amount. But the learned trial justice repeatedly and emphatically refused to admit evidence of the conversation between the parties which led to the settlement and to plaintiff's acceptance of the sum of $500. Upon the main issue, the defendant, endeavoring to show that the plaintiff, who had been living with him as his mistress for eight years, had without his knowledge become unduly intimate with another man, and that this resulted in a breach of the relations, the learned judge excluded evidence as to this new illicit relationship upon the ground that it was not admissible under the general denial in the answer and should have been pleaded as mitigating circumstances under Code of Civil Procedure, section 536. But when the defendant in support of his separate defense attempted to prove the conversation and negotiation, at which plaintiff and her new acquaintance were present, at which the settlement of her claims on defendant was arranged and at which she agreed to execute the general release, the learned trial judge insisted that if at such conversation the alleged new relations of plaintiff were discussed, it was inadmissible because the matter was not specially pleaded. The court sustained the plaintiff's objection over defendant's exception, saying that if the evidence had anything to do with the relations between the plaintiff and her new associate it was absolutely immaterial. This ruling was repeated emphatically several times over defendant's exception, and the court instructed the jury to disregard any testimony along these lines. But this evidence had a direct bearing upon the issue presented in the separate defense pleaded by defendant and the attention of the learned trial judge was called to the fact. Before the jury the plaintiff declared that she had never agreed to settle her claim, that she had been induced to sign a paper which she thought was a receipt for a comparatively small amount of money to pay her bills and rent charges, that defendant and his lawyer had taken advantage of her nervous condition and procured her signature to the release by deceit and fraud. There is no dispute that at the conclusion of the conference at the restaurant defendant telephoned to his

Second Department, December, 1920.          [Vol. 194.

lawyer asking him to remain in his office, and that plaintiff, her woman friend and the defendant went directly to the lawyer's office arriving within a quarter or half an hour, and that the release was there prepared and executed. I think the defendant was entitled to prove the conversation at the restaurant. It was part of the *res gestæ* on the issue as to the settlement, the amount agreed upon and the execution of the release. Defendant and his lawyer were charged with defrauding the plaintiff in the matter of this release, and under familiar rules, evidence tending to show the true nature of the transaction should have been fully received. This was an issue before the court and jury separate and apart from the claim for damages for breach of promise of marriage. It could have been separately tried (*Warner* v. *Star Co., supra*), but the fact that it was tried with the main issue did not alter the rules of evidence. The plaintiff alleging that she did not know she was settling her claims against defendant, that she did not know how much she was to receive and that she did not know what she was doing when she signed the release, the defendant should have been permitted to contradict her and to show that the settlement was discussed, the amount agreed upon and the reasons stated by plaintiff as inducing her to accept $500. They were all part of the transaction and, if they would disclose additional conceded wrongdoing on her part that was her misfortune. The burden of proof was upon her to avoid the otherwise conclusive effect of the settlement and release. The defendant was not obliged to plead in his answer the facts inducing the settlement to render such facts admissible in answer to her averment on the trial that she had been deceived and defrauded.

II. The appellant insists that the learned trial justice erred in excluding evidence of plaintiff's declarations that prior to her meeting defendant she had been guilty of the crime of abortion.

The complaint contains no allegation that at the earliest date of the alleged promise plaintiff was a virgin or chaste in character. But upon her direct examination the plaintiff, having testified to the alleged seduction and sexual intercourse, was asked by her counsel: " Q. And up to that time had you been a perfectly virtuous girl? A. Yes. Q. Never

had any sexual relations with any man before? A. No, sir."
And having been examined by her counsel relative to the
breaking off of the eight years' relations between plaintiff
and defendant, she testified that she had since gone to work
and supported herself. She was asked by her counsel: " Q.
Ever since that time have you been perfectly virtuous? A.
Yes, sir." And on the re-direct examination the last question
asked by her counsel before she left the witness stand was:
" Q. Did you ever in your whole life, Miss Lynch, ever have
sexual relations with any other man than Mr. Figge? A. No,
sir."

In various ways the defendant sought to introduce evidence
as to the life of the plaintiff previous to his meeting her,
and as to her conduct with another man during the time she
was living with him. The defendant denied the promise to
marry and his evidence was that their relations were at all
times meretricious, and he endeavored to prove his alleged
reasons for breaking with the plaintiff. The learned trial
judge refused to permit any evidence, as he said, " along these
lines," for the reason that defendant had not pleaded the
facts in mitigation. The plaintiff having testified that at
the time she met defendant she was a pure girl living with
her sister, there was evidence from a woman who introduced
the parties, called as a witness by defendant, which raised a
serious issue as to plaintiff's character before she met the
defendant, and the plaintiff called in rebuttal did not deny the
statements of her former friend.

Defendant, examined as a witness on his own behalf, was
not permitted to give any evidence as to plaintiff's statements
or admissions to him concerning her past life, or as to her
relations with men other than himself. The attitude of the
learned trial judge in excluding such evidence was so marked
that the witness, hesitating to answer a question asked by
his counsel, saying: " I think I will go against his Honor's
ruling," was reassured by the trial judge, who told him he was
not displeasing him, and the court said: " Could you state
it and eliminate the objectionable features? A. I will, your
Honor." But upon defendant's counsel calling attention to
the fact that this put upon the defendant the decision of what
features were objectionable, the court, conceding that this

was true, refused to permit the witness to state what the plaintiff told him concerning her relations with another man. The ruling was repeated over and over again, defendant excepting.

In charging the jury the learned court told them that if they found for the plaintiff they might award punitive damages as smart money to punish him for his acts.

The plaintiff having voluntarily introduced evidence of her purity and chastity previous to her meeting defendant, I think the defendant should have been permitted to negative her testimony by evidence that she admitted that she was not pure and chaste when she met him and in fact had an abortion performed upon her before that time. When she voluntarily introduced the issue as to her faithfulness to the defendant during the continuance of their relations, I think she opened the door and the defendant should have been permitted to prove her admissions to the contrary.

If the plaintiff proved the breach of promise and seduction she was entitled to recover her actual compensatory damages. There can be no mitigation of actual damage. (*Osterheld* v. *Star Co.,* 146 App. Div. 388; *Wuensch* v. *Morning Journal Assn.,* 4 id. 115; *Young* v. *Fox,* 26 id. 261, 271.) The jury might go beyond compensatory damages, as they were instructed, and award punitive damages, and defendant might show any legitimate or relevant fact in mitigation, provided he pleaded such fact in mitigation. The learned court instructed the jury that in awarding actual compensatory damages they might consider the indignity and mortification to plaintiff's feelings and pride as well as the blow to her affections. But where the plaintiff for the purpose of enhancing such actual compensatory damages voluntarily introduces an issue not raised by the pleadings, and testifies that she was pure and chaste when she met the defendant, it would seem to be a denial of justice to prevent the defendant from proving statements made by her to the contrary. If she lacked the sensibilities of a pure and upright person, such a person necessarily suffers less in mind than those who possess such qualities. When she saw fit upon the witness stand to go beyond her pleading and to voluntarily describe herself to the jury as a virtuous, pure woman, seduced and debauched by the defend-

ant, the defendant had an equal right to prove her admissions to show that she was not telling the truth. (*Mc Kane* v. *Howard,* 202 N. Y. 181; *Osterheld* v. *Star Co., supra; Gulerette* v. *Mc Kinley,* 27 Hun, 320; *Wandell* v. *Edwards,* 25 id. 498; *Bracy* v. *Kibbe,* 31 Barb. 273; *Crandall* v. *Barron,* 57 Hun, 259; affd., 127 N. Y. 690; *Allen* v. *Besecker,* 55 Misc. Rep. 366; *Watry* v. *Ferber,* 18 Wis. 500; *Mitchell* v. *Work,* 13 R. I. 645.) " If some of the things said of the plaintiff were shown to be true, their truth, if establishing misconduct, should be allowed to affect the amount of the damages, which, otherwise, the jurors would be minded to award. Damages given as a compensation should be precisely commensurate with the injury." (*Gressman* v. *Morning Journal Assn.,* 197 N. Y. 474.)

III. The appellant complains that the trial judge admitted evidence that during the time she lived with defendant she had eight separate abortions at defendant's request, each operation being attended with great pain.

Plaintiff's counsel asserted that this was one of the elements of damage. The evidence was admitted over defendant's exception. Nothing was said in the complaint concerning abortions. I doubt the admissibility of the evidence. Commission of a felony can hardly be said to be the natural result of the injury alleged in the complaint. (*Keefe* v. *Lee,* 197 N. Y. 68.) And in addition the court over defendant's objections and exceptions allowed the plaintiff to testify that during the time she lived with defendant she told him she was very fond of children and asked him " if it would not be all right to let one of these operations — never mind one of these operations; to go on with it " so that she might have a child. And the court asking, " Q. What did he say to that? A. He said, ' No, go and have an operation performed. We don't want to have any children.' " By plaintiff's counsel: " Q. Were you willing to bear him children? A. Yes, sir." The learned court told the jury that in determining the amount to be awarded as actual damages they might consider " all the disappointments that came to her from the failure of marriage, as well as the blow to her affections." Aside from the fact that a desire on the part of a woman for illegitimate children is somewhat unusual, the admission of this evidence introduced a highly speculative element of damage. " It permitted the

plaintiff to thrust into the trial an issue foreign and imperti-
nent to those framed by the pleadings and without the scope
of the cause of action." (*McKane* v. *Howard, supra,* 187.)

Because of the errors in the rulings referred to, I recommend
that the judgment be reversed and a new trial granted.

JENKS, P. J., RICH, PUTNAM and BLACKMAR, JJ., concur.

Judgment and order reversed and new trial granted, with
costs to abide the event.